# EXHIBIT "O"

# Whitestone Construction Corp. Purchase Order 13-0139-002

Address : 50-52 49th Street, Woodside, New York 11377 U.S.A.

PURCHASE ORDER Made as of Date: October 24, 2013

To: Yuanda USA Corporation, 36 West Randolph Street, Suite 600, Chicago, IL 60601
   Tel: +1 (312) 332-8700; Fax: +1 (312) 332-8710
   ("Vendor") Ship & Deliver To:

Test Lab: Architectural Testing, Inc. 130 Derry Court York, Pennsylvania 17406 USA
Project Site: CUNY NYCCT New Academic Building 285 Jay Street, Brooklyn, New York, NY 11201 USA

Lump Sum Purchase Order Price: ("Lump Sum Purchase Order Price"):    $5,911,509.27 USD
Five Million Nine Hundred Eleven Thousand Five Hundred and Nine Dollars and Twenty Seven Cents

Yuanda USA Corporation, with an address at 36 West Randolph Street, Suite 600, Chicago, IL 60601 ("Vendor") agrees to provide to Whitestone Construction Corp., 50-52 49th Street, Woodside, N.Y. 11377 U.S.A. (Subcontractor), all curtain wall system design, engineering, structural calculations, shop drawings, product data & sample submittals including product certifications and test reports, curtain wall system thermal analysis, sealant compatibility and adhesion tests for material assembled and glazed in plant, material, fabrication, transportation to Test Lab and Project Site, transportation insurance from Vendor's manufacturing facility up to acceptance of material deliveries at Test Lab and Project Site final destination, bond in the form of a non-reducible percentage performance, labor and material bond to be in full effect to six (6) months after the last delivery to Project Site from an A rated bonding company acceptable to the Subcontractor and allowed to conduct business in the State of New York, lab mock-up curtain wall material including qualified Yuanda technical witness at Test Lab during mock-up installation and testing, as required to furnish and deliver all curtain wall system materials ("Vendor's Work") for the above referenced Project in strict accordance with this Purchase Order and Yuanda Deviation List from specifications 084413, 084426, and 088000 noted in item 8 of attachment A, the attached seven (8) page Purchase Order's Standard Terms and Conditions, Scope Worksheet Attachment A, the Contract Documents as described in Attachment A & B, the Delivery Schedule in Attachment C and the Schedule of Values in Attachment D (collectively "Purchase Order"). Vendor's Work is to be furnished and delivered for the Lump Sum Purchase Order Price.

In addition to the other terms and conditions of this Purchase Order, Vendor specifically agrees:

**1. Whitestone Construction Corp. ("Subcontractor") is the Contractor's Subcontractor. When this Purchase Order requires that Vendor deliver any document to Contractor or Owner, Vendor shall deliver such document to Subcontractor, as agent for Contractor, as agent for Owner.**

**2. Vendor shall strictly adhere to Subcontractor's Delivery Schedule, Attachment C, such that the quantity and quality of Vendor's Work will not delay or disrupt product installation or other Work on the Project.**

**3. Vendor shall cooperate/coordinate with all work of the Subcontractor who will install Vendor's product so that there will be no delays or disruptions of engineering review, product installation or other work on the Project.**

4. Subcontractor shall have the right at any time to assign ("Assignment") this Purchase Order to a third party ("Assignee") provided, however, (a) the Assignment shall provide that Subcontractor expressly guarantees Assignee's obligation solely to pay Vendor the Lump Sum Purchase Order Price in accordance with Assignee's obligations under this Purchaser Order otherwise such assignment shall be null and void, and (b) after the Assignment, Subcontractor shall be a third party beneficiary under the Purchase Order, as assigned, and shall have all rights, remedies and claims against Vendor that Assignee has under this Purchase Order, as assigned. The Subcontractor shall indemnify the Vendor against any losses due to the assignment by the Subcontractor of this



Purchase Order. If such assignment causes damages to the Vendor, the Subcontractor shall be responsible for the compensations to the Vendor of any such losses.

5. This Purchase Order must be signed by Vendor and received by Subcontractor (as agent for Contractor as agent for Owner) prior to delivery of any of Vendor's Work. Signature and receipt are each conditions precedent to any obligation of Subcontractor to perform or to pay Vendor (the "Conditions Precedent").

6. Subject to Vendor's compliance with all material terms of this Purchase Order including, without limitation, Article 11 of the Terms and Conditions, Subcontractor will pay Vendor the Lump Sum Purchase Order Price in installments as follows:

d. Payment per Attachment D, Schedule of Values shall be in accordance with the Terms and Conditions attached.
e. Final payment will be made in accordance with the Terms and Conditions attached.
f. Each payment to Vendor shall be paid by wire transfer care of:

Yuanda USA Corporation
36 West Randolph Street, Suite 600, Chicago, IL 60601
Tel No. +1 (312) 332-8700
Fax No. +1 (312) 332-8710
Bank Name: Citibank, N.A.
Bank Address: 2022 S. Archer Ave., Chicago, IL 60616
Bank Account NO.: 0800671205
Bank Routing (ABA#): 271070801

7. Notwithstanding any provision of this Purchaser Order or its Attachments to the contrary, neither Vendor or Subcontractor will be entitled in connection with any breach or violation of this Agreement to recover any punitive damages, exemplary or other special damages or any indirect, incidental or consequential damages, including without limitation damages relating to loss of profit, business opportunity or business reputation. Each party, as a material inducement to the other party to enter into and perform its obligations under this Purchase Order, hereby expressly waives its right to assert any claim relating to such punitive damages and agrees not to seek to recover such damages in connection with any arbitration or other proceeding relating to this Agreement. The foregoing will not limit the right of either Subcontractor or Vendor to indemnification in accordance with the provisions of this Purchase Order with respect to all components of any claim, award or judgment against such party by any third party. In any event, the aggregate amount of all Vendor's liabilities to indemnify the Subcontractor or other Indemnified Parties under this Purchase Order for whatever reasons shall not exceed the 10% of the Lump Sum Purchase Order Price.

PURCHASE ORDER, TERMS AND CONDITIONS AND
EXHIBITS A, B, C and D ACCEPTED:
Vendor: **Yuanda USA Corporation**
Subcontractor: **Whitestone Construction Corp.**

By: _Feng Zhu_                                         By: _[signature]_

Print Name: Feng Zhu                        Print Name: **Steven Grzic**
Title: president                                              President

## PURCHASE AGREEMENT TERMS AND CONDITIONS

This Agreement is made effective this 24th day of October 2013, by and between Whitestone Construction Corp. ("the Subcontractor") and Yuanda USA Corporation (the "Vendor") (this Agreement hereinafter referred to as the "Purchase Order" or the "Purchase Agreement").

1. **Acceptance of Contract.** Acceptance of this Purchase Agreement by Vendor includes all plans, specifications and exhibits referenced herein and all agreements and documents set forth in paragraph 2 and 3 below. This Purchase Agreement is the final integration of the parties' agreements and supersedes all prior forms, agreements, proposals and negotiations. No changes will be effective unless this Purchase Agreement is modified in writing by an authorized representative of Subcontractor.

2. **Other Agreements Incorporated By Reference.** Vendor acknowledges that Subcontractor, has entered into a Subcontract with F.J. Sciame Construction Company, Inc. ("Contractor" for the "Owner") for the specified work at the CUNY NYCCT New Academic Building located at 285 Jay Street Brooklyn, NY 11201 USA (the "Site" and/or the "Prime Contract"). The Contract Documents as set forth in Whitestone Purchase Order Attachment B related to curtain wall pertaining to the Prime Contract between the Owner and Subcontractor are incorporated herein by reference to the extent that the Prime Contract applies to the work under this Purchase Order. Vendor shall assume toward Subcontractor all obligations and responsibilities which, under the Contract Documents as set forth in Whitestone Purchase Order Attachment B related to curtain wall pertaining to the Prime Contract, the Subcontractor assumed toward Contractor and Owner and Architect/Engineer and shall be bound by the rulings of Subcontractor, Contractor and Owner and Architect/Engineer including, but not limited to, extensions of time. Upon the Vendor's request, the Subcontractor shall afford the Vendor an opportunity to review any or all of the Prime Contract documents, either at the Subcontractor's main office or at the Project site, or copies will be provided upon request.

3. **Contract Documents.** This Purchase Order includes the body of the Purchase Order, Attachments A, B, C and D attached, these Terms and Conditions and the Contract Documents as set forth in Attachment B (Contract documents) related to curtain wall under the Prime Contract. Further, the Contract Documents and any addenda and written modifications to them are hereby incorporated by reference and made a part of this Purchase Order as if fully set forth herein except as specifically set forth in Attachment A. This Purchase Order and the incorporated Contract Documents contain the entire agreement between Subcontractor and Vendor with respect to the Project. No other agreements, representations, warranties, opinions, or other matters, oral or written, of the Subcontractor or Contractor, or any of Subcontractor's or Contractor's respective members, officers, agents or employees, shall be deemed to bind Subcontractor to Vendor with respect to the Project. Vendor's Work is not limited by any titles on the drawings or headings in the Specifications because the parties intend that all work customarily performed with the Vendor's Work and required by the Contract Documents shall be performed by Vendor, including any and all items and services consistent with, contemplated by and reasonably inferable from, the Contract Documents, whether or not such items and services are specifically mentioned therein, unless expressly excluded in Attachment A. It is the intention of the parties that all terms of this Purchase Order and the Contract Documents are to be considered as complementary. However, in the event that such an interpretation is not possible, the order of precedence of such documents shall be: (1) Modifications of this Purchase Order; (2) Modifications of the Contract Documents; (3) this Purchase Order, and (4) the Contract Documents, unless the provisions of paragraph (5) apply. And the written modifications made at a later date supersedes all earlier modifications or other original Contract Documents Except as otherwise provided, all references herein to days shall be to calendar days. The term "Vendor's Subcontractor" shall mean any Subcontractor, vendor or materialman who is supplying material or performing work in connection with the Purchase Order and who has a direct contractual relationship with Vendor. The term "lower-tier Subcontractor" shall mean any Subcontractor, vendor or materialman at any tier supplying material or performing work in connection with the Purchase Order.

4. **Insurance.** Vendor shall obtain and maintain the insurance described in this Paragraph 4 with the terms and conditions herein described. Immediately upon receipt of this Purchase Order, and as a condition precedent to any obligation of Subcontractor hereunder, Vendor shall at the expense of Vendor furnish to Subcontractor certificate(s) of insurance in a form, and from an insurer(s), acceptable to Subcontractor for materials in transit by way of sea or land transportation (shipping, railroading, trucking) to Test Lab and Project Site final destination specified in the Purchase Order Agreement. Subcontractor's failure to request or to obtain such certificate(s) of insurance from Vendor at Purchase Order inception or prior to any payment shall not be a waiver of this, or any other, covenant or condition of this Purchase Order.

a. **All Risks in Transportation.** The Vendor shall obtain the insurance of ALL RISKS IN TRANSPORTATION with minimum limits of $5,911,509.27 USD general aggregate in favor of the Vendor to the final destination. The Subcontractor shall endeavor to assist the Vendor for freight claim processing.

5. **No Assignment By Vendor Unless Subcontractor Consents.** Vendor shall not sublet or assign this Purchase Order nor sell or assign the proceeds of this Purchase Order without the prior written consent of Subcontractor, Contractor, Owner, and or Architect/Engineer. Any such subletting or assignment without Subcontractor's written consent shall be null and void.

6. **Vendor Default & Termination.** If Vendor shall at any time (1) refuse or fail to provide material complying with the Contract Documents of the proper quality, (2) fail in any material respect to prosecute Vendor's Work according to Subcontractor's schedule agreed to by the parties, (3) cause, by any action or omission, the stoppage,



delay, disruption, obstruction, hindrance, interference, acceleration of the work of the Project or of any other Contractor or Subcontractor, (4) fail to comply with any provision of this Purchase Order or the Contract Documents, (5) fail to pay any Subcontractor, supplier, employee, benefit fund or tax, (6) make a general assignment for the benefit of Vendor's creditors or become insolvent, or (7) have a receiver appointed, then, within five (5) calendar days either of transmittal of a written notice advising Vendor of the default, the duty to submit within (7) days a written cure plan for approval and Subcontractor's intent to exercise one or more of the following options, and to the extent that Vendor's written cure plan fails to be approved by the Subcontractor and the Vendor is informed of such failure, Subcontractor, at Subcontractor's option, without voiding the other provisions of this Purchase Order, may (i) take such steps as are necessary to overcome the condition, in which case the Vendor shall be liable to Subcontractor for the cost thereof; (ii) terminate for default Vendor's performance of all or a part of the Purchase Order Work; and/or (iii) obtain specific performance or interlocutory mandatory injunctive relief requiring performance of Vendor's obligations hereunder, it being agreed by Vendor that such relief may be necessary to avoid irreparable harm to the Subcontractor. In the event of termination for default, Subcontractor may, at Subcontractor's option, (a) enter on Vendor's premises or elsewhere and take possession, for the purpose of completing the work, of all materials related to this Purchase Order, (b) take assignment of any or all of Vendor's subcontracts related to this Purchase Order, and/or (c) complete the work by whatever method Subcontractor may deem expedient. At such time, if the unpaid balance of the Purchase Order Amount shall exceed the expense incurred by Subcontractor including overhead and profit, such excess shall be paid by Subcontractor to Vendor. If such amount shall exceed such unpaid balance, the Vendor shall pay Subcontractor the difference on demand. Vendor agrees and acknowledges that in the event that Vendor or Vendor's creditors file a petition under any bankruptcy or similar law, Subcontractor need not consent to assumption or assignment of this Purchase Order because, among other reasons, of the damages and other liabilities to which Subcontractor may be exposed. Subcontractor's failure to exercise any right under this Article 6 shall not be a waiver of such right. If Subcontractor wrongfully exercises Subcontractor's option to overcome a condition caused by Vendor's asserted act or omission, Subcontractor's wrongful exercise shall be treated as a deductive change only. If Subcontractor wrongfully exercises Subcontractor's option to terminate for default, that termination for default shall be considered a termination for Subcontractor's convenience and Vendor shall be entitled to the applicable compensation provided below in this Article 6. Vendor's remedies under this Article 6 shall not be exclusive. Nothing herein shall bar withholdings or offsets by Subcontractor permitted by the provisions of this Purchase Order from payments to Vendor. Termination of this Purchase Order by Subcontractor or abandonment by Vendor shall not relieve Vendor from Vendor's obligations in connection with Vendor's Work performed prior to termination or abandonment nor abrogate any obligations of Vendor under, or rights or remedies afforded to Subcontractor by, this Purchase Order or the Contract Documents including without limitation, Vendor's hindrance and indemnity obligations. Subcontractor shall have the right to terminate for convenience Vendor's performance of all or a part of the Vendor's Work by providing Vendor with a written notice of termination for convenience which shall be effective upon receipt by Vendor. If Subcontractor terminates for convenience, (i) Vendor shall be entitled to payment for all Work, including the appropriate portion of the overhead and profit, actually in fabrication or completed prior to the effective date of the termination; (ii) any actual penalties and compensation of Vendor's costs related to the termination; (iii) materials ordered and paid by Vendor in compliance with the procedure specified in the Purchase Order; and (iv) products in transit, less Subcontractor's prior payments, but shall not be entitled otherwise to any anticipatory profit.

7.    **Submissions.**    (a) Vendor shall deliver to Subcontractor copies of shop drawings, catalogue cuts, brochures, samples, material lists and other submissions (collectively, "Submissions") required by Subcontractor or the Contract Documents within sufficient time so as not to delay performance of the Project or within sufficient time for Subcontractor to submit the same within the time stated in the Contract Documents, whichever is earlier. Submissions shall be in strict accordance with the Contract Documents. If Vendor wishes to propose a deviation from the Contract Documents, such deviation shall be clearly identified as a deviation on the Submission and accompanied by a letter describing such deviation in detail and the effect, if any, on cost and time of performance of Vendor's Work. Vendor's Final Biding documents for CUNY Project 2013.10.24 including its Proposal Drawings and related clarification documents provided by the Vendor and confirmed with the Subcontractor shall have the same force with the Contract Documents; same is subject to submission, review and approval by the Architect and Engineer. No approval granted of a Submission shall relieve Vendor from full compliance with the Contract Documents. Requested deviations will be allowed only if Subcontractor gives specific written approval referencing the deviation to Vendor by Change Order from Subcontractor. The review by Subcontractor, Contractor, Owner, or Architect of Submissions is limited to conformance with the general design concept for the Project and shall not be construed as a complete check or approval, either in whole or in detail, nor shall it relieve the Vendor from responsibility for errors and/or omissions of any sort therein, or from the necessity of furnishing any Vendor's Work required by the Contract Documents which may have been omitted from the Submissions. b) Subcontractor agrees that in accordance with the provisions of the Contract Documents, Architect shall review or reject the Submissions with authorized stamp within 10 working days after the Architect receives the submission. c) if the Architect does not approve a Submission, Subcontractor agrees that Architect shall provide comments regarding nonconformities or failures to comply with the Contract Documents in connection with such rejection in a single document. Vendor shall execute procurement and fabrication work only after the relevant Submissions are approved by Architect and delivered to Vendor. If the submissions are rejected more than two times for independently verifiable failure to comply with project requirements and contract documents, Vendor

will be responsible to pay for additional reviews by Architect. If the basis for rejection of the submissions is independently verified to be unfair, unreasonable, malicious, capricious, or the result of changes introduced into the project, then Vendor shall be entitled to resubmit a third time without bearing costs for additional reviews by the Architect.

8.     **Material Delivery.**   Vendor shall conform to the following rules for arrival of goods at the Test Lab and Project Site: (a)  Cost of all shipping of materials and transportation insurance up to acceptance of material deliveries at Test Lab and Project Site final destination is the responsibility of Vendor; (b) Vendor must notify Subcontractor's on-site superintendent forty-eight (48) hours prior to delivering any materials.  During customs clearance in the USA and as soon as reasonably practicable after receipt of Vendor's notice, Subcontractor shall coordinate with Vendor's local transportation agent for customs clearance and provide the customs bond number of Subcontractor, and cooperate in completing the POA – CUSTOMS POWER OF ATTORNEY with Vendor to pay the costs of customs duties and the customs clearance as paid simultaneously with the customs duties (such as MPF, HMF, etc); the Subcontractor shall submit to the Vendor's transportation agent in USA a delivery plan immediately upon receipt of the Arrival Notice, and the Subcontractor shall complete the unloading within 2 hours after all containers delivered each time arrive at the designated place and sign (POD) PICK UP/DELIVERY ORDER, viz. to stamp and sign on the FAX-copies of Arrival Notice showing the actual date shipments arrived at the destination of Test Lab site in Pennsylvania and Project Site in New York, and then fax the copy to the Vendor or the Vendor's representative in USA, and the Vendor's transportation agent or its trucking company shall remove the containers from the site immediately after the unloading of the shipment; Subcontractor shall complete and bear all the works and costs incurred at the site, including but not limited to, the costs of unloading, handling, storage, protection and demurrage at the site, and the additional costs thereof incurred by Vendor due to Subcontractor's fault (c) Each shipment of material shall contain a packing slip with the correct nomenclature of contents and the box or carton containing this information must be so marked.  At the time of shipment, Vendor must forward packing slip to the destination of shipment c/o Subcontractor to alert Subcontractor's supervisor as to what material is in transit so that arrangements can be made at least forty-eight (48) hours in advance to receive, allocate, and store material; (d)    If Vendor fails to adhere to the foregoing notification and other requirements, the Subcontractor shall notify the Vendor in writing of its obligations to comply with the foregoing notification and other requirements, and if Vendor still fails to perform such obligations after the receipt of such written notice of Subcontractor, Subcontractor reserve the right to refuse, warehouse, or return to the carrier the shipment in question.  All related costs incurred by Subcontractor or Vendor, including, without limitation, handling, storage and protection, will be borne by Vendor; (e) Subcontractor retains the right of inspection of all off-site material; and (f) Vendor shall indicate placing location on all deliveries with descriptive tickets. The cost and responsibilities of Vendor for delivery shall terminate at the destination of Test Lab site at Architectural Testing, Inc., located at 130 Derry Court York, Pennsylvania 17406 USA for mock-up test materials and Project Site construction site at CUNY NYCCT New Academic Building 285 Jay Street, Brooklyn, New York, NY 11201 USA for all project materials. All other costs occurred at the destination of Test Lab site at Architectural Testing, Inc., located at 130 Derry Court York, Pennsylvania 17406 USA for mock-up test materials and Project Site construction site at CUNY NYCCT New Academic Building 285 Jay Street, Brooklyn, New York, NY 11201 USA for all project materials, shall be borne by Subcontractor, except Vendor's qualified Yuanda technical witness at Test Lab during mock-up installation and testing and in the US, if the governmental authorities or relevant inspection institutions, such as the Customs etc., carry out some normal examinations, the period of examination shall not be included in the delivery time of the Vendor. Vendor will endeavor to include in their portion of the work, the cost of two (2) days of storage at the Port Warehouse and four (4) days of container rental, and will advise the Subcontractor of the result of the final negotiations with their suppliers.

9.     **Time of Performance**   (a)  TIME IS OF THE ESSENCE.  (b)  Vendor will proceed with Vendor's Work in a prompt and diligent manner, in accordance with Delivery Schedule Attachment C, as amended by Subcontractor from time to time. Due to many unforeseeable elements in ocean shipping impacting transit time, Subcontractor agrees that Vendor's delivery time to the site may vary from the Delivery Schedule, Attachment C, by seven (7) calendar days early or late. Subcontractor shall have the right to direct the sequence and pace of Vendor's Work, to modify the construction schedules, to suspend, to delay or to accelerate, in whole or in part, the commencement or execution of Vendor's Work, without monetary compensation to Vendor except as set forth in this Article 9 below. Vendor shall adhere to Subcontractor's  schedules and orders with respect to the progress of Vendor's Work, including amendments thereto, even if such schedules or orders differ from schedules set forth in the Contract Documents, or revisions thereto, or the time of completion called for by the Contract Documents. No later than thirty (30) calendar days prior to Subcontractor's modification of the Delivery Schedule, Subcontractor shall notify Vendor in writing of any such anticipated changes. Vendor shall within ten (10) calendar days thereafter notify Subcontractor if Vendor believes the change is likely to unreasonably impact Vendor's own schedule obligations or increase Vendor's costs or the costs of one of Vendor's Subcontractors or suppliers.  In the event such anticipated schedule modification or any actual modification by Subcontractor to the Schedule does not unreasonably impact Vendor's own schedule obligations or increase Vendor's costs or the costs of one of Vendor's Subcontractors or suppliers, Vendor shall accommodate such anticipated or actual modification and the Schedule will be deemed modified accordingly.  In the event any actual or anticipated change by Subcontractor to the Delivery Schedule unreasonably impacts Vendor's own schedule obligations or increases Vendor's costs or the costs of one of its Subcontractors or suppliers, Vendor and Subcontractor shall jointly develop a recovery plan that as much as possible allows Vendor to maintain continuous

installation or assembly in compliance with Vendor's own schedule and sequence requirements prior to the actual or anticipated change to the Delivery Schedule. (c) Vendor shall complete punch list work within the mutually agreeable established time frame. (d) Within ten days after signing this Purchase Order and as requested thereafter, Vendor shall submit scheduling documents in a form and format acceptable to Subcontractor, which shall comply with all scheduling requirements of the Contract Documents. Subcontractor may from time to time, at Subcontractor's sole discretion, direct Vendor to make modifications and revisions to such schedules. Vendor's schedules are solely for the benefit of Subcontractor. Subcontractor's receipt, review and/or acceptance of Vendor schedules shall not constitute any amendment to the Purchase Order. Vendor's provision of such schedule(s) shall not satisfy any notice requirements of this Purchase Order or of the Contract Documents, (e) Vendor will cooperate/coordinate with the work of Subcontractor, and the Subcontractor's separate trade Subcontractors or employees, if any, so that no delays, obstruction, disruption or interference will occur in completion of any part or all of the Project, or the work of other of Subcontractor's separate Subcontractors or employees. Vendor shall reimburse all damages resulting from Vendor's failure to prosecute or to complete Vendor's Work in a timely manner; Subcontractor's actual damages also may include, without limitation, extended overhead, acceleration and any damages of other trade Subcontractors or other vendors, cost of financing and other damages, all of which Vendor hereby indemnifies Subcontractor from under this Purchase Order. (f) Subject to the notice requirements and limitations set forth in this Purchase Order and the Contract Documents, Vendor may be entitled to time extensions and/or additional compensation, respectively, (i) for compliance with schedule amendments, (ii) for damages for delay, disruption, obstruction, interference, out-of-sequence work, suspension, hindrance, acceleration, constructive acceleration, impacts of changes or other causes, but only to the limited extent (x) Vendor can prove entitlement, causation and quantum, and (y) damages for additional field or shop labor costs and/or overtime compensation of field or assembly facility labor, additional freight or shipping charges, storage costs, additional material costs, backcharges to Vendor from the Subcontractors or suppliers of any tier arising from such delay. If the modification to the Delivery Schedule initiated by the Subcontractor comprises 15 calendar days or less, Vendor shall not have the right to claim for any compensation, (g) Vendor shall not be held responsible for failure or delay to perform all or any part of this Purchase Order due to Force Majeure or Fortuitous Events, including but not limited to war, commotion, strike and natural disaster, such as flood, fire, earthquake, hurricane and so on.

10.   **Changes.**   (a) This Purchase Order cannot be amended, modified, or changed except in a written Change Order, signed by the designated representative of Subcontractor. (b) Subcontractor shall be entitled unilaterally to alter, modify, add to or delete from any of the Vendor's Work, if within or related to the general scope of the Vendor's Work, with adjustment in the Purchase Order Amount, if any, or extension of time, if any, to be in accordance with this Purchase Order. Subcontractor may, at any time, unilaterally or by agreement with Vendor, without notice to Vendor's sureties, order changes in or to Vendor's Work or the method, sequence or schedule thereof. Any unilateral order or bilateral agreement under this Article 10 shall be in writing. Vendor shall not perform any work in the change order until the Vendor receives the written confirmation by the Subcontractor on the proposal submitted by Vendor in respect of program and/or amount of the performance of the above change order. (c) Subject to the notice requirements and limitations set forth in this Purchase Order and the Contract Documents, Vendor shall submit to Subcontractor any requests or claims for adjustment in the Purchase Order Amount, schedule or other provisions of the Vendor for changes directed by Subcontractor as a result of deficiencies or discrepancies in the Contract Documents, or for circumstances otherwise permitted by the Contract Documents or this Purchase Order. If Vendor considers any action or inaction by Subcontractor other than a formal written change order to be a change, Vendor shall so notify Subcontractor within seven (7) days of said action or inaction and seek a written change order from Subcontractor. Failure to so notify Subcontractor shall constitute a waiver of the right to any compensation for the action or inaction, (d) Vendor shall submit within ten (10) days after an Subcontractor request for change a reasonable quotation and/or time request with back-up, (e) In the event that a component of Vendor's Work is altered or deleted by a Change Order signed by the designated representative of Subcontractor after the component is fabricated, Subcontractor shall compensate all the costs of Vendor incurred prior to the date of the related Request for Change Order was issued, including but not limited to the cost of design, material procurement, fabrication, transportation, overhead and reasonable profit; and if the time of completion of Vendor's Work is initially delayed by such Request for Change Order, Subcontractor shall grant a corresponding time extension to Vendor.

**Inspection & Defective Work:** (a) Without any duty of Subcontractor to Vendor to provide continuous or exhaustive inspections, the Subcontractor may inspect Vendor's Work for compliance with this Purchase Order or the Contract Documents, whether at the Project site or any other place where items or services for such Vendor's Work, or documents may be in preparation, manufacture, storage or installation. Vendor shall promptly prepare the plan for the approval of the Subcontractor, in order to replace or correct any Vendor's Work which Subcontractor shall reject as failing to conform to the requirements of this Purchase Order and/or Contract Documents whether rejected before or after installation, with exclusion of those specified in item (b) listed below. Upon approval of Vendor's plan by Subcontractor, Vendor shall promptly replace or correct any Vendor's Work. If Vendor does not do so within a reasonable time, Subcontractor shall have the right to do so and Vendor shall be liable to Subcontractor for the cost thereof. If, in the opinion of Subcontractor, it is not expedient to correct or replace all or any part of rejected Vendor's Work or materials, then Subcontractor, at Subcontractor's option, may deduct from the payments due, or to become due, to Vendor, such amount as in Subcontractor's reasonable judgment will represent (i) the difference between the fair value of the rejected Vendor's Work and the value thereof if Vendor's Work had complied with this Purchase

Order, or (ii) the cost of correction, whichever Subcontractor determines is more appropriate. Unless otherwise agreed in writing by Subcontractor, neither failure to inspect nor use by the Subcontractor, shall constitute acceptance of Vendor's Work, (b) Subcontractor shall open the container to inspect the goods. If any obvious damage as the result of transportation including load shifting or product breakage is evidenced, Subcontractor shall promptly report such cases to the insurance company pursuant to the contacts on the policy, and assist Vendor to process the procedures for claim, inform Vendor as soon as possible by written notice and supporting photos. Such notification shall be issued no later than 7 calendar days after the shipment arrives at the Test Lab and Project Site, or it shall be deemed the Subcontractor has accepted the particular shipment without damage resulting from the transportation of the product. Upon the unloading of the containers at the jobsite, the Subcontractor shall inspect each individual piece for surface defects such as breakages, damages, scratches or besmirchment (and any improper color or improper shape or striation, shall not be considered a surface defect) Subcontractor shall inform Vendor as soon as possible by written notice and supporting photos. Such notification shall be issued no later than 7 calendar days after the shipment arrives at the Site or it shall be deemed the Subcontractor has accepted the particular shipment without surface defects. ~~If the Subcontractor completes the installation of such shipment of the Vendor's Work and the Owner performs timely inspection and sign-off of same, such shipment of Vendor's Work shall be deemed accepted by Subcontractor without surface defects only.~~

    11.   **Purchase Order Amount & Price Escalation**. If Vendor is in compliance with this Purchase Order, Subcontractor shall pay Vendor for total performance of Vendor's Work, subject to additions and deductions only by written change order which change orders are not effective unless and until signed by the designated representative of Subcontractor the total lump sum as set forth on the front side of this Purchase Order (the "Purchase Order Amount"). Other than solely as permitted by a written Change Order, the Lump Sum Purchase Order Price includes any and all price escalation throughout the duration of the Project.

    12.   **Progress Payments**. Subject to Vendor's compliance with the payment application procedures of this Purchase Order as defined in Article 24 below and within forty (40) days after the date of bill of lading of Vendor's goods, Subcontractor will pay Vendor progress payments in the amount of Vendor's Work included within an approved Application for Payment, less any set-offs claimed by Subcontractor. On a monthly basis Subcontractor shall have the right, but not the duty, to make joint check payments to Vendor's labor, health, welfare, pension and fringe benefit funds and Subcontractors or suppliers of any tier. No progress payment made under this Purchase Order shall be considered an acceptance of Vendor's Work, in whole or in part. All material and work incorporated into the Project or for which progress payment has been made to Vendor shall become the property of the Subcontractor; however, this provision shall not relieve Vendor, and Vendor's surety and insurers, from the sole responsibility and liability for all work and materials as set forth in this Purchase Order and the Contract Documents regardless of whether Subcontractor has made payments therefor.

    13.   **Final Payment**. Final payment, subject to withholdings and setoffs permitted hereunder, shall be due to Vendor only after the last of the following to occur, each of which are a condition precedent to Subcontractor's obligation to make, and Vendor's right to receive, final payment: (a) full completion of Vendor's Work by Vendor, (b) final review and acceptance of the punch list completion thereof by Architect and Subcontractor, (c) the furnishing of satisfactory evidence that Vendor has paid in full all persons furnishing labor or materials in connection with the Work including any taxes or governmental charges with respect thereto or with respect to the Work, and that neither Vendor nor any person claiming under or through Vendor has filed or has the right to maintain a lien or other claim against Subcontractor or on the Project premises, (d) the delivery of all guarantees, warranties, bonds, instruction manuals, performance charts, diagrams, as built drawings and similar items required of Vendor or its suppliers with respect to the Work, (e) compliance with the Billing Procedures of Article 24 below; and (f) Vendor's execution and delivery of Vendor's Full and Final Release, Satisfaction and Waiver on Subcontractor's form and as set forth by the General conditions of the contract.

    14.   **Warranties** (a) Vendor shall provide in triplicate, a separate written guarantee at the time of final billing guaranteeing Vendor's work against defects in materials and/or workmanship, except for those specified in the Deviation List from Specs 08920 in item 8 of Attachment A, for the period required in the Specifications. If required by the Contract Documents, Supplier shall also provide a manufacturer's guarantee for materials and equipment. All guarantees shall meet the express terms and conditions required under the warranty provisions of the Contract Documents for the period called for in the specifications or, if not specified, for twelve (12) months. All Warranty Periods shall commence 6 months after the last material delivery to the Project Site. For any defect of materials within the warranty period, the Vendor shall promptly provide and deliver to site such materials necessary for the remedies and replacement, and the Subcontractor shall be responsible for the remedies and replacement thereof as well as the costs of labor resulted therefrom. (b) If Vendor disputes liability, Subcontractor and Vendor shall jointly determine, to the extent possible, the source or cause of the alleged defect. If Subcontractor or other parties other than Vendor are determined to be the source or cause of the defect, Vendor shall provide components, materials and technical support for remedying or replacing at the expense of Subcontractor to the extent Vendor is not at fault but, otherwise Vendor shall bear responsibility.

    15.   **Vendor's Representations**. Vendor represents and warrants that (i) Vendor is fully qualified to perform this Purchase Order, (ii) Vendor is experienced in the type of Vendor's Work required by this Purchase Order, (iii) prior to the execution of this Purchase Order, Subcontractor has supplied Vendor with full and complete access to the Contract Documents and the Project site, (iv) Vendor has thoroughly reviewed this Purchase Order and the Contract

Documents including, but not limited to, the most current Project Schedule, (v) Vendor has visited and inspected the site of Vendor's Work and has independently investigated the local conditions and is fully aware of all the obligations, risks, responsibilities, difficulties, and limitations which this Purchase Order, the Contract Documents, the locality, and the Project site impose, and (vi) Vendor has entered into this Purchase Order based on Vendor's own examination, investigation and evaluation of the Purchase Order, the Contract Documents, the Project site and the local conditions and therefore any failure by Vendor to investigate independently and become fully informed Owner will not relieve Vendor from Vendor's responsibilities hereunder.

16.   **Liens & Claims.**  Vendor shall indemnify, defend and hold Owner and Subcontractor harmless from and against all liens, claims, demands, judgments, costs and attorneys', consultants' and experts' fees relating to any demand for payment of any lower-tier Subcontractors, suppliers, employees, employee benefits, withholding taxes, and applicable taxes.  After the first progress payment hereunder, Subcontractor shall have the right to withhold any subsequent payments until Vendor submits evidence satisfactory to Subcontractor that all amounts owed in connection with performance of this Purchase Order have been paid.  Further, Vendor agrees that Subcontractor, after giving notice to Vendor, may pay all persons who have not been paid the monies due them in connection with this Purchase Order whether or not a lien claim or payment bond claim has been filed, unless Vendor (i) demonstrates that such sums are not due, (ii) provides Subcontractor with a bond or security acceptable to Subcontractor, as applicable, and (iii) indemnifies, defends and protects fully the Subcontractor against loss by reason of such lien or claim.  Subcontractor at all times shall have the right itself or to require Vendor to discharge or to defend against any lien or claim asserted by any of Vendor's Subcontractors, suppliers, employees, sureties or creditors against Subcontractor, the Project, or the Project's funds.  In discharging or defending, Subcontractor shall have the right to employ attorneys of Subcontractor's choice.

17.   **Withholding, Set-Off, Non-Waiver.**  Subcontractor may withhold amounts otherwise due under this Purchase Order or any other agreement between the parties to cover Subcontractor's reasonable estimate of any costs or liability Subcontractor has incurred or may incur for which Vendor may be responsible under this Purchase Order or any other agreement between the parties.  Neither partial nor final payment shall constitute or imply acceptance of any of Vendor's Work or waiver of any of Subcontractor's rights and remedies under this Purchase Order and the Contract Documents.

18.   **Taxes, Permits & Laws.**  In accordance with Attachment A or any addenda or Modifications thereto including, Vendor agrees to pay and to comply with and to defend and to hold Subcontractor harmless against the payment of all customs duties and customs clearance charges as it relates to the importation of the Product and the transportation premiums arising out of the inland transportation of the Product to the site, and all federal, state and local taxes arising out of the inland transportation of the Product to the site.  If the U.S.A. customs duties, customs clearance or transportation taxes increase because of any new U.S.A. duties or taxes, Subcontractor agrees to consider such changes as a possible increase to the purchase order and will give reasonable consideration of issuing a modification in accordance with Article 10 Changes.  All permits, licenses, fees and certificates of inspection (including for all equipment utilized by Vendor) necessary for the prosecution and completion of Vendor's Work is excluded from the Lump Sum Purchase Order Price unless Attachment A states otherwise.  Vendor shall arrange for all necessary inspections and approvals by public officials, give Subcontractor prior written notice of same and provide Subcontractor with all inspection reports and certificates.  Vendor shall be bound by, and, at Vendor's own cost, shall comply and cause Vendor's employees and lower tier Subcontractors and suppliers to comply with, all federal, state and local laws, codes, ordinances, regulations, rules and orders applicable to this Purchase Order, the performance of the work hereunder, and the Project site, whether by reason of general law or by reason of provisions in this Purchase Order or the Contract Documents, whether now or hereafter existing, including, without limitation, equal employment opportunity, minority, women and small business enterprises, the hiring of aliens, health and safety laws and regulations. Vendor and all lower-tier Subcontractors shall be duly licensed to operate under the law of the applicable jurisdictions. To demonstrate compliance, Vendor shall furnish, and shall cause Vendor's lower-tier Subcontractors to furnish, such reports and information and in such form and substance as may be reasonably requested by Subcontractor or any other governmental body or agency requesting the same.

19.   **Vendor Liability & Indemnity.**  In the event of any loss, damage or destruction thereof from any cause, except for the circumstances specified in item b of Article 14 of this Purchase Agreement Terms and Conditions, prior to delivery to the Test Lab in Pennsylvania and Project Site in New York, Vendor shall be liable therefor, and shall repair, refabricate, rebuild and make good said loss, damage or destruction at Vendor's sole cost.  Vendor shall indemnify, defend and hold Subcontractor, Owner, and Architect and each of their members, affiliates, subsidiaries and parent corporations and any other entity entitled to indemnification under the Contract Documents, and their officers, directors, agents, employees and consultants and each of them (the "Indemnified Parties"), harmless from and against any and all claims, demands, suits, actions, expenses, judgments, losses and liabilities, including fines and penalties, costs and attorneys', consultants' and experts' fees as a result of Vendor's breach of this Purchase Order in accordance with the terms of this Purchase Order and the Contract Documents, but if such claims, demands, suits, actions, expenses, judgments, losses and liabilities, arise out of or are claimed to arise out of bodily injuries to persons including, but not limited to, disease or death, or damage to tangible and intangible property including the loss of use resulting therefrom, Vendor shall not be obligated to indemnify to the extent of the Indemnified Parties' negligence (but shall still be obligated to defend).  The foregoing obligations of Vendor shall include, but are not limited to,

indemnifying, defending and holding harmless from claims made by third parties against any of the Indemnified Parties. To the extent that the damages, costs and liabilities listed below from (1) through (8) are reasonable and foreseeable at the time of Vendor's default, the Vendor's liability includes, but is not limited to, (1) damages and other delay costs payable by Subcontractor; (2) Subcontractor and any Trade Subcontractor's increased costs of performance, such as extended overhead and increased performance costs resulting from Vendor-caused delays or omitted or defective Vendor's Work; (3) warranty, rework and repair costs; (4) liability to third parties, including, but not limited to, Subcontractor's Subcontractors; (5) excess reprocurement costs; (6) costs to obtain a substitute Vendor or costs incurred to demand and ensure performance in the event of Vendor default; (7) consultants' and experts' fees; and (8) attorneys' fees and related costs. All Indemnified Parties have an obligation to take all reasonable measures to mitigate their damages or costs. Vendor's breach of the Purchase Order shall include the breach of Vendor's lower-tier Subcontractors or suppliers to perform. The foregoing indemnity shall also be an obligation of Vendor's performance bond surety provided, however, the existence or non-existence of a performance or payment bond shall in no way limit or condition Subcontractor's right of indemnity or remedies against Vendor nor shall it limit Vendor's responsibilities hereunder. Vendor's indemnity obligation shall not be limited by any worker's compensation statute, disability benefit or other employee benefit or similar law or by any other insurance maintained by Vendor. Vendor hereby waives, and shall cause Vendor's Subcontractors and suppliers of any tier to waive, any rights any of them may have to limit the amount of damages, losses, or obligations which may be recoverable against them by reason of any Worker's compensation statute. Vendor's indemnity herein includes, but is not limited to, assumption of all liabilities on account of, or in any way related to, Vendor's Work which Subcontractor may have assumed pursuant to the Contract Documents or under agreements with third parties. One percent (1%) of the Purchase Order Amount represents specific consideration to Vendor for the indemnifications set forth in this Purchase Order. Vendor's indemnification obligations are independent from, and not limited in any manner by, the Vendor's insurance coverage obtained pursuant to this Purchase Order and Exhibit A. All amounts owed by Vendor to Subcontractor as a result of the indemnity and liability provisions of this Purchase Order shall be paid upon demand.

20.   **Retainage.** Subcontractor may withhold as retainage ten percent 10% of the sums due to the Vendor, however, when the amounts of payment have reached fifty percent 50% of the Lump Sum Purchase Order Price, the Subcontractor shall cease to withhold all sums due to Vendor, resulting in an overall five percent 5% retention. The Vendor will provide a retention bond in the amount of 5% of the Purchase Order Price to replace such retainage after last shipment of goods arrive at the jobsite. The Subcontractor shall release ~~all the retainage~~ the retention bond to Subcontractor within sixty (60) days after the completion of installation of the Vendor's Work, and after the Subcontractor receives all warranties and close-out documents from the Vendor. Subcontractor may also withhold payment to the extent reasonably necessary to protect Subcontractor from any loss because of: defect in the work not remedied; failure of Vendor to make payments for obligations incurred; reasonable evidence that the work cannot be completed for the unpaid Purchase Order balance; delay or damage caused by Vendor; failure of Vendor to carry out the work in accordance with the construction documents.

21.   **Settlement of Disputes.** In the event of any dispute involving this Purchase Order, Vendor's Work or any claims of Vendor, Vendor nevertheless and without interruption, shall continue to perform Vendor's Work in a diligent manner. No action or proceeding arising out of or relating to this Purchase Order shall be commenced or maintained against Subcontractor unless such action or proceeding is commenced no later than six (6) months after either (i) the cause of action accrues, (ii) the termination or conclusion of this Agreement, or (iii) the last day Vendor performed any physical work or furnished any materials to the Project Site, whichever of the proceeding events shall occur first. Subcontractor shall not be required to participate in any action or proceeding in any court except the courts of the State of New York located in the County of New York, or the United States District of New York for the Southern District of New York. Vendor consents to the jurisdiction of said courts in any action or proceeding arising out of or relating to this Purchase Order. This Purchase Order shall be construed in accordance with the laws of the State of New York.

Notwithstanding anything herein to the contrary, Subcontractor may, at its sole option, demand arbitration of any dispute or claim arising out of or relating to this Purchase Order pursuant to the Construction Industry Rules of the American Arbitration Association then prevailing in New York City. If Subcontractor is required by the Prime Contract to arbitrate or submit to an alternative dispute resolution forum any dispute or claim with Subcontractor or another party and such dispute or claim involves the Purchase Order work, the Vendor shall participate in the prosecution or defense of such dispute or claim, provide notices and furnish information within the time required by the Prime Contract, share in the legal costs associated with the prosecution or defense, and be bound by the results of such arbitration or alternative dispute resolution forum. The final determination of any such dispute resolution procedure shall be a condition precedent to the Vendor's right to commence or maintain any action or proceeding, if any, against Subcontractor. In Subcontractor's sole discretion, any arbitration between Subcontractor and Vendor may be consolidated into and become a part of the arbitration proceedings between or among the Subcontractor or any Trade Subcontractor or other vendor which arbitration shall bind Subcontractor and Vendor.

22.   **Royalties.** Except as otherwise provided by the Contract Documents, Vendor shall pay all royalties and license fees which may be due with respect to Vendor's Work. Vendor shall pay the cost to defend and any settlement of or judgment entered on all suits or claims for infringement of any intellectual property rights that may be brought against Vendor, Owner, or the Subcontractor arising out of Vendor's Work. Subcontractor, at Subcontractor's option,

may designate counsel to defend and Vendor shall be liable to Subcontractor for all reasonable costs, expenses and attorneys', consultants' and experts' fees as well as for any settlement or judgment.

23.    **Invalidity & Non-Waiver**.  If any provision of this Purchase Order is invalid, in whole or in part, the provision shall be considered reformed to reflect the intent thereof to the greatest extent possible consistent with law. The failure of Owner or Subcontractor to insist, in any one or more instances, upon the performance of any of the terms, covenants, or conditions of this Purchase Order, or to exercise any right or remedy, shall not be construed as waiver or relinquishment of such term, covenant, condition, right or remedy.

24.    **Billing Procedures**.  The following Billing Procedures apply to this Purchase Order:

A.    Subcontractor will process Vendor's invoices after the Purchase Order has been signed by Vendor without alteration and returned to Subcontractor with an appropriate Insurance Certificate.

B.    Changes to Vendor's Purchase Order cannot be billed until Subcontractor issues a formal change order document and executed by both Vendor and Subcontractor or (by Subcontractor as agent for Subcontractor). Once approved, Vendor should not separately bill changes but should include the adjustment in Vendor's monthly billing at the revised Purchase Order amount.

C.    Vendor's Applications for Payment for work performed for the percentage complete certified to Subcontractor by Architect shall include the following documents:

    i. Requisition for Payment.

    ii. Application and Certificate for Payment (G702) signed by an authorized representative of the Vendor.

    iii. Schedule of values (AIA G703) in format approved by Subcontractor.

    iv. Signed Sworn Statement (completed as required by law to insure Vendor has identified and made all payments owing to lower tier Subcontractors and suppliers),

    v. Waiver(s) of Lien to date signed by an officer or authorized agent of Vendor,

    vi. Bill of Ladings of the material requested in the billing.

25.    **Subcontractor's Default & Termination**. The occurrence of any of the following acts or events shall constitute Subcontractor's default of the Subcontractor Order: (a) The failure by the Subcontractor to pay Vendor in accordance with this Purchase Order, including but not limited to the terms of these Terms and Conditions; or (b) if the Subcontractor becomes insolvent, suffers the appointment of a receiver, makes an assignment for the benefit of its creditors, or proceedings involving Subcontractor as a debtor are commenced under any bankruptcy, insolvency, or debtor's relief law, unless such proceedings are vacated or set aside within sixty (60) days after the date of commencement thereof.  In the event of an occurrence of an event of default by the Subcontractor, Vendor shall provide to the Subcontractor a written notice of the event of default. Within five days of receipt of such notice, Subcontractor shall propose a default correction plan to cure fully the default within thirty (30) days thereafter. If Subcontractor shall fail to cure the default, Vendor may suspend performance of the Vendor's Work for the shorter of (i) the duration until cured or, (ii) three months. If the default remains uncured, Vendor may terminate the Purchase Order effective upon five days additional written notice to Subcontractor.  Upon the effective date of Vendor's termination for Subcontractor's default, (i) Subcontractor shall make payment for work completed by Vendor before the termination date, provided that such work complies with the Purchase Order and the Contract Documents; and (ii) Subcontractor shall recompense to the Vendor cost of materials ordered and paid by the Vendor in compliance with the procedure specified in the Purchase Order; and (iii) Subcontractor shall pay to the Vendor the price of products in transit.

26.    **Delay in Time**
The time for delivery by Vendor shall be extended to a reasonable period and Vendor shall be entitled to relevant compensation for costs in the case of the following circumstances:

    i. Contractor is granted the time extension by Owner;

    ii.   the changes made pursuant to this Purchase Order;

    iii.   the delay of Contractor in providing information necessary for Vendor's design or the insufficiency of such information, and the delay in drawings approval caused by Contractor;

    iv.   the delay in the work schedule arising from the violation of this Purchase Order by Contractor, or the acts, neglects or faults of the Owner and Contractor's personnel."

VENDOR: Ynanda USA Corporation        SUBCONTRACTOR: Whitestone Construction Corp.

By:  _Feng Zhu_                   By:  _____

Print Name: _Feng Zhu_           Print Name:    **Steven Grzic**

Title:  _President_               Title:       **President**

**SCOPE WORKSHEET Attachment A**

CUNY NYCCT New Academic Building
Whitestone Const. Corp. Yuanda Purchase Order Scope Check List
Spec. Section 084413, 084426, and 088000 Curtain Wall

√ in Y column = by Yuanda
√ in N column = not by Yuanda and/or by Whitestone

|   | Item | Y | N | Comments |
|---|------|---|---|----------|
| 1 | Plans & Specs 084413, 084426, 088000 & related sections | √ | | Per items 52 & 54 |
| 2 | WCC CUNY NYCCT NAB LOI_09-30-13.pdf | | √ | |
| 3 | WCC CUNY NYCCT NAB Submissions Letter 10-09-13.doc | | √ | |
| 4 | Clarification(rev.9).pdf | √ | | 10-24-13 |
| 5 | BOQ OF city tech academic building (2013.10.25).pdf | √ | | 10-25-13 |
| 6 | Yuanda's proposal drawing-13.10.24.pdf; work scope 13.10.24.pdf; Pakaging plan.pdf | √ | | 10-24-13 (proposal dwgs & work scope) 05-07-13 (packaging plan) 11-25-13 (proposal dwgs. govern regarding exterior alum. trim at head of WT-1A/B/C & WT-8 which is not supplied by Yuanda) |
| 7 | Yuanda's materials list | √ | | See Yuanda Clarification(rev.9).pdf |
| 8 | Deviation List from Specs | √ | | Per Final Biding documents for CUNY Project 2013.10.24 |
| 9 | System Design & Engineering | √ | | |
| 10 | Structural Calculations | √ | | |
| 11 | NYS PE Stamp | √ | | Both Shop Drawings & Calculations to have PE Stamp |
| 12 | Thermal Analysis | √ | | |
| 13 | Mock-Up Materials | √ | | |
| 14 | WT-1A/B/C, WT-3, WT-6 & WT-8 miscellaneous structural steel engineering, detailing, shop drawings & production drawings in both metric (China shapes & sizes) and imperial (US shapes & sizes) including detailing of all field welds & connections. WT-1A/B/C, WT-3, WT-6 & WT-8 shop drawings to include detailing of this steel. | √ | | Includes all miscellaneous steel tubes, channels, angles, clips, brackets, gusset plates, etc., directly related to support of WT-1A/B/C, WT-3, WT-6 & WT-8 wall systems that is detailed on the architectural drawings but not shown on the structural steel drawings (excludes WT-6 SS T-beam canopy outriggers). |
| 15 | Yuanda to provide quotation for supply of item 14 misc. steel. | √ | | Excludes supply of SS T-beam for support of WT-6; note: WCC to determine later whether to source this material from Yuanda or locally |

| | | | | |
|---|---|---|---|---|
| | | | | depending on the schedule. |
| 16 | Engineering, Detailing, and shop & production drawings for WT-3 claddings; this to be detailed on WT-3 shop drawings, similar to the way it is generally shown on Yuanda proposal drawings. | √ | | Material supply is by Whitestone; This is the exterior and interior head and base claddings (SS & Alum) related to WT-3 that is shown on A-351, 352, 353 typical. |
| 17 | Embed layout drawings and supply of embeds | √ | | |
| 18 | Ship & deliver M/U materials to ATI, York, Pa. USA | √ | | Includes customs duties, customs clearance, sea & land transportation (ship, rail, truck) |
| 19 | Ship & deliver job materials to Job Site, NYC, USA | √ | | Includes customs duties, customs clearance, sea & land transportation (ship, rail, truck). |
| 20 | Includes all transportation per items 18 & 19 (sea & land) | √ | | |
| 21 | In transit insurance from plant to destination | √ | | |
| 22 | Bond (AAA rated) | √ | | Full material/performance bond to be in full effect to six (6) months after the last delivery to Project Site. |
| 23 | Submissions per specifications | √ | | |
| 24 | Certifications per specifications | √ | | |
| 25 | Samples per specifications | √ | | |
| 26 | Mock-up lab chamber, test & report fees | | √ | |
| 27 | Field layout & installation | | √ | |
| 28 | Shop drawings | √ | | |
| 29 | Guarantees & warrantees per spec. & addendums | √ | | |
| 30 | Alum. anchor plates | √ | | |
| 31 | Anchor bolts | √ | | |
| 32 | Insulation within curtain wall system | √ | | |
| 33 | Firesafing | | √ | |
| 34 | Glass (SYP) & glazing for 084413; glass supply for 084426 | √ | | |
| 35 | Thermal breaks in system 084413 & 084426 | √ | | |
| 36 | Thermal isolation in system 084413 & 084426 | √ | | |
| 37 | Weep system 084413 & 084426 | √ | | |
| 38 | Horiz. & vert. system stack design per proposal dwgs. | √ | | System design per Yuanda proposal drawings 10-24-13 and related clarification (rev. 9). |
| 39 | Operable vents | √ | | |

| 40 | Spandrel glass | √ | | |
|----|----|----|----|----|
| 41 | Structural glazing | √ | | |
| 42 | Finishes per specification 084413 & 084426 | √ | | |
| 43 | Bundling & packaging | √ | | |
| 44 | WW Tie Backs | √ | | |
| 45 | Caulking & sealants in cw system | √ | | Sealing the weatherproof silicone sealant on site is by Whitestone |
| 46 | Replacement glass for glass broken during transit | √ | | Replacement glass for glass broken during transit is provided by Yuanda including the costs of reglazing of the glass into the unitized blocks, and the primer and structural sealant costs |
| 47 | Attic stock glass per spec | √ | | |
| 48 | Spare parts/glass per spec | √ | | |
| 49 | Qualified Yuanda technical representative present at ATI Lab Mock-up installation & testing and at initial start-up of site installations | √ | | |
| 50 | Attachments in Yuanda Server Address: ftp:// 218.25.117.98 Username: YDDYF Password: yddyf Folder: "WCC Yuanda CUNY NYCCT New Academic Building Purchase Order" | √ | √ | All information in Yuanda server folder WCC "Yuanda CUNY NYCCT New Academic Building Purchase Order" accessed, downloaded, & reviewed |
| 51 | Insurance PICC Example | √ | √ | |
| 52 | Contract Plans, Specifications, Bid Booklet & Addendums 1 - 6 | √ | √ | Folder on ftp server |
| 53 | Purchase Order | √ | √ | Folder on ftp server |
| 54 | Specification 084413, 084426, & 088000 & related sections | √ | √ | Folder on ftp server |
| 55 | Submittal Check List | √ | √ | Folder on ftp server |
| 56 | Warranties | √ | √ | Folder on ftp server |
| 57 | Whitestone Submittal Letter 10-9-13 | √ | √ | Folder on ftp server |
| 58 | Whitestone LOI 9-30-13 | √ | √ | Folder on ftp server |
| 59 | Schedule Milestones | √ | √ | Folder on ftp server |
| 60 | Yuanda Bond Example | √ | √ | Folder on ftp server |
| 61 | Yuanda BOQ dated 10-25-13 | √ | √ | Folder on ftp server |
| 62 | Yuanda clarification dated 10-24-13 | √ | √ | Folder on ftp server |
| 63 | Yuanda Deviation Sheet from Spec.084413, 084426, & 088000 | √ | √ | Folder on ftp server |
| 64 | Yuanda Glass Data | √ | √ | Folder on ftp server |

| | | | | |
|---|---|---|---|---|
| 65 | Yuanda Proposal Drawings dated 10-24-13 | √ | √ | Folder on ftp server |
| 66 | Yuanda Quality Control | √ | √ | Folder on ftp server |
| 67 | Yuanda Schedule 10-18-13 | √ | √ | Folder on ftp server |
| 68 | Yuanda Schedule of Values 10-24-13 | √ | √ | Folder on ftp server |
| 69 | Yuanda Submissions | √ | √ | Folder on ftp server |
| 70 | US Trade Compliance | √ | | Yuanda to comply with US Dept. of Commerce for compliance with US aluminum extrusion anti-dumping regulations and submit project specific aluminum resourcing documentation and certification for resourcing of alum. extrusions outside China. |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Job Name: CUNY NYCCT New Academic Building
Trade Contractor: Yuanda

Attachment B
CONTRACT DOCUMENTS

1. The Contract Documents

a. The Purchase Order Agreement Form, the Purchase Order Terms and Conditions and
Attachments A through D.

b. Such other Drawings and Specifications as may be prepared by Architect after the
execution of this Purchase Order Agreement which shall be included in this Purchase Order
Agreement as Contract Documents by Change Order. If such **revised** Drawings and
Specifications **are prepared and issued that** revise the scope of the Purchase Order
Agreement, **same will be treated as a Change Order**. The scope revisions will be subject to
the notice, pricing and limitations of the Purchase Order Agreement.

c. Any safety/quality control manuals as may be issued after the execution of this Trade
Contract.

d. All modifications of the above.

e. Yuanda's Clarification (rev.9) of CUNY project - Item 4 at Attachment A (as noted)

2. Vendor represents and acknowledges that the documents described in paragraph 1, and to
the extent issued to date, have been received, reviewed and relied upon by the Vendor in
entering into this Purchase Order Agreement. The parties agree Items (b) and (c) will be
available only at a date after execution of this Purchase Order Agreement

**CHINA YUANDA**

**CITY TECH ACADEMIC BUILDING** Project

| No. | Task name | Dur | Start | Finish | 2013 Q1 | Q3 | 2014 Q1 | Q3 | 2015 Q1 |
|-----|-----------|-----|-------|--------|---------|----|---------|----|---------|
| 1 | The Whole Time Limit | 371 d | 13-10-23 | 15-3-25 | | | | | |
| 2 | Sign The Contract | 1 d | 13-10-23 | 13-10-23 | | | | | |
| 3 | The Architect Provides the Final Approved construction structural drawings | 1 d | 13-10-23 | 13-10-23 | | | | | |
| 4 | Visual Mock Up Stage | 151 d | 13-10-24 | 14-5-22 | | | | | |
| 5 | Architect provides color sample | 2 d | 13-10-24 | 13-10-25 | | | | | |
| 6 | Yuanda to make sample per the color sample | 35 d | 13-10-28 | 13-12-13 | | | | | |
| 7 | Deliver sample to US for architect's approval | 10 d | 13-12-16 | 13-12-27 | | | | | |
| 8 | the architect choose the visual mock up location | 1 d | 13-10-24 | 13-10-24 | | | | | |
| 9 | Yuanda Designs the MOCK UP Shop Drawings(Visual Mock Up) | 25 d | 13-10-25 | 13-11-28 | | | | | |
| 10 | The Architect Reviews the Mock up Shop drawing and returns (Visual Mock up) | 10 d | 13-11-29 | 13-12-12 | | | | | |
| 11 | Yuanda revies the visual mock up drawings | 12 d | 13-12-13 | 13-12-30 | | | | | |
| 12 | The archtect confirm the drawings | 5 d | 13-12-31 | 14-1-6 | | | | | |
| 13 | Order the Alu Extrusions,Glasses of Mock up (Visual Mock up) | 3 d | 14-1-7 | 14-1-9 | | | | | |
| 14 | Purchase the Alu Extrusions,Glasses of Mock up (Visual Mock up) | 30 d | 14-1-10 | 14-2-20 | | | | | |
| 15 | Mock up Fabrication and Assembly (Visual Mock up) | 25 d | 14-2-21 | 14-3-27 | | | | | |
| 16 | Mock up Shipment (by sea) (Visual Mock up) | 30 d | 14-3-28 | 14-5-8 | | | | | |
| 17 | Architect Confirm and Approve the Visual Mock up | 10 d | 14-5-9 | 14-5-22 | | | | | |
| 18 | Performance Mock UP Stage | 229 d | 13-11-29 | 14-10-15 | | | | | |
| 19 | the architect choose the Performance Mock UP location | 2 d | 13-11-29 | 13-12-2 | | | | | |
| 20 | Yuanda Designs the Mock up Shop Drawings (Performance Mock up) | 35 d | 13-12-3 | 14-1-20 | | | | | |
| 21 | The Architect Reviews the Mock up Shop drawing and returns (Performance Mock u| | 10 d | 14-1-21 | 14-2-3 | | | | | |
| 22 | Yuanda Revises the Mock up Shop Drawings  (Performance Mock up) | 10 d | 14-2-4 | 14-2-17 | | | | | |
| 23 | The Architect Reviews the Mock up Shop drawing and returns (Performance Mock u| | 7 d | 14-2-18 | 14-2-26 | | | | | |
| 24 | Yuanda Revises the Mock up Shop Drawings  (Performance Mock up) | 7 d | 14-2-27 | 14-3-7 | | | | | |
| 25 | Architects to confirm mockup drawing | 5 d | 14-3-10 | 14-3-14 | | | | | |
| 26 | the mock-up dies fabrication | 25 d | 14-3-17 | 14-4-18 | | | | | |
| 27 | Order the Alu Extrusions,Glasses of Mock up (Performance Mock up) | 3 d | 14-4-21 | 14-4-23 | | | | | |

Complied by: Shenyang Yuanda Aluminium Industry Engineering Co.Ltd.
Date:2013-10-18
The schedule's start date is based on the signing date of the purchase order contract.Currently,the start date is supposed to be october 23,2013 . If the siging date of the contract is delayed , the project will be postponed accordingly.1 If there is force majeure all the schedule should be postponed accordingly.2 If the approval of the drawing is delayed,then the schedule should be postponed accordingly.3 When there is dramatic variation of the design during the drawing submit approval process or two party can not get the consistent for some issue the schedule will be postponed accordingly. 4 If the schedule is delayed for other reasons which were not cause by our company,then the schedule should be postponed accordingly.



CITY TECH  ACADEMIC BUILDING  Project

CHINA YUANDA

| No. | Task name | Dur | Start | Finish | 2013 Q1 | Q3 | 2014 Q1 | Q3 | 2015 Q1 |
|---|---|---|---|---|---|---|---|---|---|
| 28 | Purchase Alu Extrusions, Glasses of Mock up (Performance Mock up) | 55 d | 14-4-24 | 14-7-9 | | | | | |
| 29 | Mock up Fabrication and Assembly (Performance Mock up) | 25 d | 14-7-10 | 14-8-13 | | | | | |
| 30 | Mock up Shipment (by sea)  (Performance Mock up) | 30 d | 14-8-14 | 14-9-24 | | | | | |
| 31 | Mock up Installation, Test and Approval (Performance Mock up) | 15 d | 14-9-25 | 14-10-15 | | | | | |
| 32 | Engineering stage | 179 d | 14-2-18 | 14-10-24 | | | | | |
| 33 | Embedments' location submittal drawings L1-8 | 30 d | 14-2-18 | 14-3-31 | | | | | |
| 34 | architect to review and reply embedment drawing | 10 d | 14-4-1 | 14-4-14 | | | | | |
| 35 | Yuanda Revises Embedments' location submittal drawings L1-8 | 10 d | 14-4-15 | 14-4-28 | | | | | |
| 36 | architect to review and confirm embedment drawing | 5 d | 14-4-29 | 14-5-5 | | | | | |
| 37 | yuanda prepare & submit the shop drawings(level  4-8) | 40 d | 14-3-3 | 14-4-25 | | | | | |
| 38 | the architect review &return the shop drawings | 15 d | 14-4-28 | 14-5-16 | | | | | |
| 39 | yuanda revise & submit the shop drawings (level  4-8) | 12 d | 14-5-19 | 14-6-3 | | | | | |
| 40 | the architect revises &return the shopdrawings again | 8 d | 14-6-4 | 14-6-13 | | | | | |
| 41 | yuanda revises &submit the shop drawings again | 10 d | 14-6-16 | 14-6-27 | | | | | |
| 42 | the architect confirm the shop drawings | 6 d | 14-6-30 | 14-7-7 | | | | | |
| 43 | yuanda prepare & submit the shop drawings(level 1-3) | 40 d | 14-6-20 | 14-8-14 | | | | | |
| 44 | the architect review &return the shop drawings | 15 d | 14-8-15 | 14-9-4 | | | | | |
| 45 | yuanda revise & submit the shop drawings (level 1-3) | 12 d | 14-9-5 | 14-9-22 | | | | | |
| 46 | the architect revises &return the shopdrawings again | 8 d | 14-9-23 | 14-10-2 | | | | | |
| 47 | yuanda revises &submit the shop drawings again | 10 d | 14-10-3 | 14-10-16 | | | | | |
| 48 | the architect confirm the shop drawings | 6 d | 14-10-17 | 14-10-24 | | | | | |
| 49 | the phase of  procurement | 158 d | 14-6-3 | 15-1-8 | | | | | |
| 50 | Purchase Yuanda embedment L1-8 | 30 d | 14-6-3 | 14-7-14 | | | | | |
| 51 | Purchase Extrusions   (level 4-8) | 70 d | 14-7-8 | 14-10-13 | | | | | |
| 52 | Purchase Glass  (level 4-8) | 70 d | 14-7-8 | 14-10-13 | | | | | |
| 53 | Purchase Extrusions   (level 1-3) | 70 d | 14-10-3 | 15-1-8 | | | | | |
| 54 | Purchase Glass  (level 1-3) | 70 d | 14-10-3 | 15-1-8 | | | | | |

Complied by: Shenyang Yuanda Aluminium Industry Engineering Co.Ltd.
Date:2013-10-18
The schedule's start date is based on the signing date of the purchase order contract. Currently, the start date is supposed to be october 23, 2013 . If the siging date of the contract is delayed , the project will be postponed accordingly. 1 If there is force majeure all the schedule should be postponed accordingly. 2 If the approval of the drawing is delayed, then the schedule should be postponed accordingly. 3 When there is dramatic variation of the design during the drawing submit approval process or two party can not get the consistent for some issue the schedule will be postponed accordingly. 4 If the schedule is delayed for other reasons which were not cause by our company, then the schedule should be postponed accordingly.



**CHINA YUANDA**

**CITY TECH  ACADEMIC BUILDING** Project

| No. | Task name | Dur | Start | Finish | 2013 | | 2014 | | 2015 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Q1 | Q3 | Q1 | Q3 | Q1 |
| 55 | Fabricaton stage | 80 d | 14-10-20 | 15-2-6 | | | | | |
| 56 | Fabricaton for the alu curtain (level 4-8) (level 1-3) | 80 d | 14-10-20 | 15-2-6 | | | | | |
| 57 | Shipment stage | 180 d | 14-7-17 | 15-3-25 | | | | | |
| 58 | Embedment shipment for L1-8 | 30 d | 14-7-17 | 14-8-27 | | | | | |
| 59 | the alu curtain wall shipment (level 4 wt-1A/1B/1C) | 30 d | 14-11-20 | 14-12-31 | | | | | |
| 60 | the alu curtain wall shipment (level 5 wt-1A/1B/1C) | 30 d | 14-12-4 | 15-1-14 | | | | | |
| 61 | the alu curtain wall shipment (level 6 wt-1A/1B/1C) | 30 d | 14-12-18 | 15-1-28 | | | | | |
| 62 | the alu curtain wall shipment (level 7 wt-1A/1B/1C) | 30 d | 14-12-31 | 15-2-10 | | | | | |
| 63 | the alu curtain wall shipment (level 8 wt-1A/1B/1C) | 30 d | 15-1-15 | 15-2-25 | | | | | |
| 64 | the alu curtain wall shipment (level 1-3 wt-8) | 30 d | 15-1-29 | 15-3-11 | | | | | |
| 65 | the alu curtain wall shipment (level 1-3 wt-3/wt-6) | 30 d | 15-2-12 | 15-3-25 | | | | | |

Complied by: Shenyang Yuanda Aluminium Industry Engineering Co.Ltd.
Date:2013-10-18
The schedule's start date is based on the signing date of the purchase order contract. Currently, the start date is supposed to be october 23, 2013 . If the siging date of the contract is delayed , the project will be postponed accordingly. 1 If there is force majeure all the schedule should be postponed accordingly. 2 If the approval of the drawing is delayed, then the schedule should be postponed accordingly. 3 When there is dramatic variation of the design during the drawing submit approval process or two party can not get the consistent for some issue the schedule will be postponed accordingly. 4 If the schedule is delayed for other reasons which were not cause by our company, then the schedule should be postponed accordingly.



## City Tech Academic Building      2013.10.24

| Item | Description | Scheduled Value SV x | Scheduled Amount 5,911,509.27 |
|---|---|---|---|
| 1 | Sign the contract | 4.00% | 236,460.37 |
| 2 | Provide Bond | 1.19% | 70,346.96 |
| | **Engineering and Calculations** | | |
| 3 | Data & Sample Submittals | 2.00% | 118,230.19 |
| 4 | Mock-Up Drawings, Procedure, and Calc's. | 1.00% | 59,115.09 |
| 5 | Mock-up Testing Complete/Final Report | 2.00% | 118,230.19 |
| 6 | Shop Drawings for floors 1 through 8 | 5.00% | 295,575.46 |
| 7 | Structural Calc's for floors 1 through 8 | 3.00% | 177,345.28 |
| | **Materials** | | |
| 8 | VMU WT-3 Mock-up Shipment | 3.00% | 177,345.28 |
| 9 | Delivery of Embeds & Alum. Anchors to Jobsite | 2.00% | 118,230.19 |
| 10 | WT-1A/B/C Unitized Curtainwall Level 4 | 7.000% | 413,805.65 |
| 11 | WT-1A/B/C Unitized Curtainwall Level 5 | 7.000% | 413,805.65 |
| 12 | WT-1A/B/C Unitized Curtainwall Level 6 | 7.000% | 413,805.65 |
| 13 | WT-1A/B/C Unitized Curtainwall Level 7 | 7.000% | 413,805.65 |
| 14 | WT-1A/B/C Unitized Curtainwall Level 8 | 7.000% | 413,805.65 |
| 15 | WT-1B Unitized Curtainwall Auditorium N/S/E | 2.300% | 135,964.71 |
| 16 | WT-3 Point Glazed Struct. Glass Curtainwall | 24.000% | 1,418,762.23 |
| 17 | WT-6 Canopy | 1.760% | 104,042.56 |
| 18 | WT-8 Unitized Curtainwall | 12.250% | 724,159.89 |
| 19 | Delivery of Warranties & Close-Out Doc's | 1.50% | 88,672.64 |
| | | 100% | 5,911,509.27 |

| CUNY | Whitestone Purchase Order 13-0139-002 | | | |
|------|---------------------------------------|--------|----------|-------------|
| NYCCT | Yuanda BOQ 10-25-13 | | | |
| NAB | Yuanda Clarification (rev. 9) 10-24-13 | | | |
| | | | | |
| | 1 WT-1A | 49,778 | 55.68 | 2,771,639 |
| | 2 WT-1B | 3,842 | 61.45 | 236,091 |
| | 3 WT-1C | 5,490 | 64.69 | 355,148 |
| | 4 WT-3 | 14,317 | 99.06 | 1,418,242 |
| | 5 WT-6 | 1,236 | 36.21 | 44,756 |
| | 6 WT-8 | 13,394 | 55.83 | 747,838 |
| | 7 WW Tie-Backs | 72 | 120.86 | 8,702 |
| | 8 VMU WT-3 | 216 | 181.49 | 39,202 |
| | 9 PMU WT-1 | 702 | 100.01 | 70,209 |
| | 10 PMU WT-3 | 384 | 181.44 | 69,674 |
| | 11 PMU WT-8 | 384 | 102.22 | 39,254 |
| | 12 Embed Test Samples/Air Frt/Rep. | 1 | 10657.42 | 10,657 |
| | 13 Argon | 1 | 30000.00 | 30,000 |
| | | | | 5,841,412 |
| | | | | |
| | Bond | | 1.20% | 70,096.95 |
| | WCC Purchase Order Amount | | | 5,911,509.27 |

Alternates (excluding Bond)

| ALT 1 | VMU WT-1 (Clarification Alt. 1) | 351 | 98.93 | 34,724 Add |
|-------|--------------------------------|--------|--------|-------------|
| ALT 2 | VMU WT-8 (Clarification Alt. 2) | 234 | 104.74 | 24,509 Add |
| ALT 3 | WT-3 (Clarification Alt. 3) | 14,317 | 99.06 | 165,791 Add |
| ALT 4 | WT-3 (Clarification Alt. 4) | 14,317 | 99.06 | 319,985 Add |

Add 1.20% to Alternates for Bond

Note:    WT-1B includes shop drawing detailing
and installation of WT-1B louvers by
Yuanda in Yuanda factory. Louver material
supplied by Whitestone.