IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WHITESTONE CONSTRUCTION CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 - cv - 1006 |
| v. | ) | |
| | ) | |
| YUANDA USA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**YUANDA'S REPLY IN SUPPORT OF ITS RULE 56 MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO WHITESTONE'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

NOW COMES Yuanda USA Corporation ("Yuanda"), by its attorneys, the Law Offices of Cynthia A. Augello, P.C. and Fox Swibel Levin & Carroll, LLP, respectfully submits this Reply in Support of Yuanda's Rule 56 Motion for Summary Judgment and Memorandum of Law in Opposition to the Rule 56 Cross-Motion for Summary Judgment filed by Plaintiff Whitestone Construction Corporation ("Whitestone").

Dated: August 13, 2021                          Respectfully submitted,

                                                By:_____

Cynthia A. Augello                              Adam L. Gill (admitted *Pro Hac Vice*)
Law Offices of Cynthia A. Augello, P.C.         Fox Swibel Levin & Carroll LLP
65 Hilton Avenue                                200 West Madison Street, 30th Floor
Garden City, New York  11530                    Chicago, Illinois  60606
(516) 888-1208                                  (312) 224-1200
caugello@augellolaw.com                         agill@foxswibel.com

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ...................................................................................1

II.   YUANDA'S REPLY IN SUPPORT OF ITS
      MOTION FOR SUMMARY JUDGMENT
      WITH RESPECT TO LIABILITY ..........................................................4

      A. Yuanda's Work Conformed with the Purchase Order
         and Contract Documents.................................................................4

      B. Whitestone Did Not Properly Reject Yuanda's Work .......................5

              1.   Whitestone's June 24, 2019 Letter Was Not A "Rejection"..............6

              2.   Only Whitestone Has The Right To "Reject" Yuanda's Work...........7

              3.   Whitestone Accepted the Risk for the Remedial Work..................10

      C. Yuanda Performed All Requested Remedial Work ..........................11

III.  YUANDA'S OPPOSITION TO WHITESTONE'S
      MOTION FOR SUMMARY JUDGMENT................................................14

      A. Whitestone's Technical Argument Does Not Support Summary Judgment ...14

      B. Whitestone Does Not Identify When Or How Yuanda
         Allegedly Breached.......................................................................17

IV.   YUANDA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT
      WITH RESPECT TO SEVERAL CATEGORIES OF
      WHITESTONE'S DAMAGES ..............................................................18

      A. Whitestone's Maximum Recovery Is Limited To The Costs Of Items
         Which Comprise "Vendor's Work"................................................18

              1.   The Plain Language Of The Purchase Order Limits Whitestone's
                   Damages To The Cost Of Items Included In "Vendor's Work"..........19

              2.   Whitestone Cannot Recover Costs For Items Not Included In
                   "Vendor's Work" Under The Purchase Order's Default And
                   Termination Provision .......................................................20

       3.   Whitestone Cannot Recover Costs For Items Not Included In
          "Vendor's Work" Under The Purchase Order's
          Indemnification Provision....................................................................21

       4.   The Elements Of Whitestone's Damages That Comprise Items Of
          "Vendor's Work" Total $32,287.61, Which Is The Upper Limit Of
          Whitestone's Potential Damages .........................................................23

   B.  Although Replacement Brackets Are An Item Of "Vendor's Work,"
       Whitestone Is Not Entitled To This Cost, Thereby Reducing Its
       Potential Damages To $7,892.61 ....................................................24

   C.  Even If This Court Finds That Whitestone May Recover Damages
       For Items Not Included In "Vendor's Work," Whitestone Has Not
       Provided Admissible Evidence Of Several Categories Of Its Damages,
       And As To Those Categories Of Damages, Partial Summary Judgment
       Is Warranted....................................................................................25

       1.   Overhead and Profit............................................................26

       2.   Insurance ...........................................................................28

       3.   Design Costs ......................................................................28

       4.   Engineering Services Costs.................................................28

   D.  Whitestone Is Not Entitled To Its Attorneys' Fees..........................29

V.      CONCLUSION..............................................................................29

# **TABLE OF AUTHORITIES**

*Cases*                                                                                    Pages(s)

*BNP Paribas Mortg. Corp. v. Bank of America, N.A.*
778 F. Supp. 2d 375 (S.D.N.Y. 2011) ...............................................................................22

*Brown v. All Pro Contracting Co.*
No. 19 -CV-10267 (RA), 2020 WL 6700576 (S.D.N.Y. Nov. 13, 2020) .........................26

*Celotex Corp. v. Catrett*
477 U.S. 317, 106 S.Ct. 2548 (1986) ..........................................................................17, 25

*Columbia Asphalt Corp. v. State*
420 N.Y.S.2d 36 (App. Div. 3d Dept. 1979) ...................................................................27

*Fahs Constr. Grp., Inc. v. State*
999 N.Y.S.2d 244 (App. Div. 3d Dept. 2014) ...................................................................4

*Federated Mut. Ins. Co. v. Woostock '99, LLC*
140 F. Supp. 2d 225 (N.D.N.Y. 2001) ..............................................................................9

*Hayward Baker, Inc. v. C.O. Falter Constr. Corp.*
960 N.Y.S.2d 764 (App. Div. 4th Dept. 2014) ............................................................9-10

*Herod's Stone Design v. Mediterranean Shipping Co.*
*S.A.*, 434 F. Supp. 3d 142 (S.D.N.Y. 2020) ...................................................................15

*Hertz Global Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*
--- F. Supp. 3d ---, 19-cv-06957 (AJN), 2021 WL 198802 (S.D.N.Y. Mar. 30, 2021) .....11

*Kader v. Paper Software, Inc.*
111 F.3d 337 (2d Cir. 1997) .............................................................................................25

*KLS Diversified Master Fund, L.P. v. McDevitt*
507 F. Supp. 3d 508 (S.D.N.Y. 2020) ..............................................................................27

*Lehman XS Trust, Series 2006-GP2 by U.S. Bank*
*Nat'l Assoc. v. GreenPoint Mortg. Funding, Inc.*
916 F.3d 116 (2d Cir. 2019) .............................................................................................22

*Maalouf v. Salomon Smith Barney, Inc.*
No. 02 Civ. 4770(SAS), 2004 WL 2008848 (S.D.N.Y. Sept. 8, 2004) ............................25

*Muench Photography, Inc. v. McGraw-Hill Global Education Holdings, Inc.*
367 F. Supp. 3d 82 (S.D.N.Y. 2019) ................................................................................14

*Princes Point LLC v. Muss Dev. LLC*
30 N.Y.3d 127 (N.Y. 2017) ........................................................................................13

*Proper v. State Farm Mut. Auto Ins. Co.*
882 N.Y.S.2d 340 (App. Div. 3d Dept. 2009) ..............................................................25

*Snead v. City of New York*
463 F. Supp. 3d 386 (S.D.N.Y. 2020)..........................................................................16

*Silk v. HCMC Legal, Inc.*
20 Civ. 10389 (KPF), 2021 WL 735348 (S.D.N.Y. Feb. 24, 2021)..............................17

*Tomaselli v. Zimmer Inc.*
14-CV-04474 (RA)(SN), 2017 WL 2820065 (S.D.N.Y. Jan. 20, 2017) .........................5

*U.S. ex rel. Keller Painting Corp. v. Torcon, Inc.*
64 F. Supp. 3d 371(E.D.N.Y. 2014) ..............................................................................9

## I.      INTRODUCTION

Between Whitestone's explicit admissions in its Response to Yuanda's Statement of Undisputed Material Facts, and its tacit acceptances of Yuanda's legal arguments by failing to challenge same in its Memorandum of Law, there is ample basis to grant Yuanda's Motion for Summary Judgment, and this Honorable Court should do so.  In order to prevail on its claim, Whitestone must demonstrate all of the following: (1) that Yuanda's work failed to conform to the Purchase Order requirements; (2) that Whitestone rejected Yuanda's work for that reason; and (3) that upon rejection, Yuanda failed to take steps to replace or correct its work.  If Yuanda can demonstrate failure of any one of these conditions, Yuanda is entitled to summary judgment.

As to the first condition, Whitestone has presented <u>no evidence</u> that Yuanda's work failed to conform to the Purchase Order.  Rather, Whitestone ignores this issue completely in its Memorandum of Law, indicating that the issue is not material and need not be addressed, and thereby concedes that Yuanda's work, in fact, conformed to the Purchase Order.  Yuanda's Motion for Summary Judgment can be granted for this reason alone.

As to the second condition that Whitestone must reject Yuanda's work, Whitestone argues that its June 24, 2019 letter was a rejection under Paragraph 10 of the Purchase Order Terms and Conditions.  However, the plain language of that letter, which is now before the Court, does not support Whitestone's argument, as the letter clearly indicated that *Sciame*, not Whitestone, was rejecting the work.  Whitestone then spends significant time arguing that a rejection by Sciame satisfied the rejection requirement of Paragraph 10 of the Purchase Order Terms and Conditions because the Sciame Subcontract was incorporated into the Purchase Order.  This position defies the plain language of the Purchase Order and is also not supported by New York law regarding operation of incorporation clauses in construction contracts.

As to the third condition that Whitestone must demonstrate that Yuanda failed to take steps to repair or replace its work following the rejection, Whitestone has made extensive admissions demonstrating that Yuanda made significant efforts to "repair or correct" its work following the design change in January 2017.  Yuanda performed as such notwithstanding its belief that it was not required by the Purchase Order to do so.  Whitestone's argument that Yuanda refused to comply with its contractual obligations is undercut by Whitestone's numerous admissions in its Response to Yuanda's Statement of Undisputed Material Facts.

If Yuanda can demonstrate that *any one* of the above-described conditions were not met, Yuanda's Motion for Summary Judgment should be granted.  As is further explained herein, Yuanda can demonstrate that *each* of the three required conditions failed.

Not only does Whitestone fail to adequately challenge Yuanda's bases for summary judgment, it hardly argues that it is entitled to summary judgment on its claim.  Whitestone does not even cite undisputed facts to demonstrate a prima facie case.  Rather, it advances a deeply flawed argument that, somehow, Yuanda's Answer to the Complaint, which was filed on June 26, 2020 and denied all material allegations, was converted into a full-scale admission by virtue of Yuanda filing its First Affirmative Defense in accordance with this Honorable Court's December 21, 2020 directive.  Even if the Complaint were deemed admitted under Whitestone's curious theory, summary judgment would not be appropriate because the First Affirmative Defense contains denials of material aspects of the Complaint, and further, admissions of conclusory allegations cannot support summary judgment in any event.

However, even if this Honorable Court denies Yuanda's Motion for Summary Judgment as to liability, or if it grants Whitestone's Motion for Summary Judgment as to liability, there are ample grounds to award partial summary judgment as to several categories of Whitestone's

purported damages, thereby streamlining the issues to be presented at trial.  First, Paragraph 10 of the Purchase Order Terms and Conditions only entitles Whitestone to damages for items included in the definition of "Vendor's Work."  The sum total of those items of Whitestone's damages which constitute items of "Vendor's Work" is $32,287.61.  Partial summary judgment on the remaining damages is appropriate.

Further, of Whitestone's alleged damages that arise out of items included in "Vendor's Work," $24,395 is for the cost of certain materials that Whitestone ordered months before it ever purportedly rejected Yuanda's work.  Yuanda did not have an obligation at that time to provide such materials, and Whitestone is not entitled to these damages.

Even if this Honorable Court rejects one or both of the foregoing bases for partial summary judgment on Whitestone's damages, a separate, alternative ground for relief is the fact that Whitestone has not presented any evidence to support four categories of its damages totaling $90,471.29.  Whitestone fully admits that it has not provided any documentation to support its alleged damages in these categories.  (See Whitestone Resp. to 56.1 SOF, ¶¶99-102).  Partial summary judgment as to these categories of damages should be granted.

Finally, Whitestone seeks its attorney's fees based on the indemnification provision in the Purchase Order.  However, under New York law, indemnification provisions only apply to first-party damages if the contract clearly and expressly connotes such an intent.  There is no such expression here.  Further, the indemnity in this case does not apply where the claim is due to negligence of one of the "Indemnified Parties," which include the Architect.  It is undisputed that the Architect's late change to the design is what gave rise to Sciame's rejection of Yuanda's work, and ultimately, the subject claim.

## II.    YUANDA'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO LIABILITY

As Yuanda explained in its Memorandum of Law in Support of Its Motion for Summary Judgment, Whitestone can recover the costs it purportedly incurred to remediate the WT-3 Clerestory *only* if: (a) Yuanda's work failed to conform to the requirements of the Purchase Order and/or Contract Documents; (b) Whitestone rejected Yuanda's work on that basis; and (c) Yuanda failed to revise its work after the work was properly rejected. Yuanda Mem., p. 9.  Under Paragraph 10 of the Purchase Order, *all three* of these conditions must be satisfied in order to trigger an obligation by Yuanda to perform and pay for remedial work.  If Whitestone fails to prove any of these three conditions, then Yuanda will prevail on Whitestone's breach of contract claim. *Fahs Constr. Grp., Inc. v. State*, 999 N.Y.S.2d 244, 246 (App. Div. 3d Dept. 2014) ("No party can prevail on a breach of contract claim if that party has failed to perform a specified condition precedent").   Because Whitestone cannot prove *any* of these three necessary conditions, the Court should grant summary judgment in Yuanda's favor.

### A.    Yuanda's Work Conformed with the Purchase Order and Contract Documents

The issue of whether Yuanda's work on the WT-3 Clerestory conformed to the Purchase Order and Contract Documents is dispositive.  Paragraph 10 of the Purchase Agreement Terms and Conditions, which is the basis for Whitestone's claim, states in relevant part:

> Vendor shall promptly prepare the plan for the approval of the Subcontractor, in order to replace or correct any Vendor's Work which Subcontractor shall reject *as failing to conform* to the requirements of this Purchase Order.

Yuanda Ex. 3, p. 6 (¶ 20) (emphasis added).  Plainly, if Yuanda's work conformed to the requirements of the Purchase Order, there could not be a replacement obligation.  Yuanda has submitted extensive admissible evidence and argument establishing that Whitestone itself

believed at the time and believes now that Yuanda's work conformed to the Purchase Order and Contract Documents. See, Yuanda Mem., pp. 10-11; Ex. 1, ¶¶ 39-46; 64(b)-(c); 69, 77.

Critically, Whitestone does not respond to the foregoing argument and does not challenge that Yuanda's work was in fact conforming.  Rather, Whitestone admits that "the gravamen of Whitestone's claim here *is not that Yuanda's work is non-conforming* . . ." Whitestone Mem., p. 24 (emphasis added).  Whitestone has thus conceded the issue that Yuanda's work conformed with the Contract Documents and Purchase Order. *Tomaselli v. Zimmer Inc.*, 14-CV-04474 (RA)(SN), 2017 WL 2820065, at *7 (S.D.N.Y. Jan. 20, 2017) ("plaintiff's failure to respond to an argument in their opposition brief conceded the argument") (citation omitted).

Because there is no genuine dispute that Yuanda's work did in fact "conform to the requirements of the Purchase Order," Yuanda Rule 56.1 Statement, ¶¶ 41-46, Whitestone cannot establish a necessary condition precedent to Yuanda's obligation to replace or correct its work. Yuanda's Motion for Summary Judgment should be granted for this reason alone.

### B.     Whitestone Did Not Properly Reject Yuanda's Work

In order for Yuanda's obligation to replace and correct its work to ripen, not only did the work need to be non-conforming, it also needed to be rejected by Whitestone.  This is the plain language of Paragraph 10 of the Purchase Order Terms and Conditions.  Whitestone never rejected Yuanda's work, Yuanda Mem., pp. 12-14, which is an additional, independent reason why Yuanda is entitled to summary judgment.

Whitestone asserts that its June 24, 2019 Letter to Yuanda "rejected" Yuanda's work. To the contrary, that letter simply advised Yuanda of *Sciame's* rejection of *Whitestone's* work. Whitestone then argues that Sciame's rejection of Whitestone's work operated as a constructive rejection of Yuanda's work. Whitestone Mem., p. 14.  However, a third party does not have the

right to reject Yuanda's work under Paragraph 10 of the Purchase Order Terms and Conditions, which provides that Whitestone alone had the exclusive right to do so.  Finally, Whitestone asserts that the language in Paragraph 2 of the Purchase Order Terms and Conditions, which requires Yuanda to perform as directed by Sciame, also transfers the financial risk of such performance to Yuanda.  The Purchase Order says nothing of the sort and its plain language does not support Whitestone's position.

### 1.     Whitestone's June 24, 2019 Letter Was Not A "Rejection"

Whitestone contends that its June 24, 2019 Letter constituted a "rejection" of Yuanda's work. Whitestone Mem., pp. 13-14.  However, the Letter explicitly states that it was *Sciame's*, ***not*** *Whitestone's*, determination that the WT-3 Clerestory work was non-conforming. The first sentence in Whitestone's Letter states, "We are writing to formally notify you that **Sciame** has rejected as non-conforming Yuanda's fabrication of the WT-3 Clerestory structural components." Whitestone Ex. Z, p. 1 (emphasis added). The Letter goes on to reference "a direction **by Sciame to Whitestone** that the previously installed WT-3 Clerestory structural members be modified in the field." *Id*. (emphasis added). Whitestone further advised Yuanda that Whitestone had filed a Notice of Dispute with Sciame, because Whitestone did not agree with Sciame's determination but, "in the interim, **Sciame has directed Whitestone** to perform the field modification . . . ." *Id*. (emphasis added).  Accordingly, the June 24, 2019 Letter evidences that Whitestone did **not** "reject" Yuanda's work under Paragraph 10 of the Purchase Order. (Indeed, the June 24 Letter is evidence that *Whitestone agrees* that Yuanda properly performed the WT-3 Clerestory work.)

The only other evidence that Whitestone offers to support its position that the June 24 Letter constituted a "rejection" pursuant to Paragraph 10 of the Purchase Order Terms and

Conditions is Yuanda's June 28 Letter in response which, according to Whitestone, "manifested an understanding that Whitestone's June 24, 2019 letter was Whitestone's rejection . . ." Whitestone Mem., pp. 13-14. The June 28 Letter refutes Whitestone's argument on its face, as the Letter explicitly references "*Sciame's* decision rejecting as non-conforming Yuanda's fabrication of the WT-3 Clerestory structural components . . ." Whitestone Ex. AA, p. 1 (emphasis added). There is nothing in Yuanda's letter that can reasonably be interpreted as Yuanda acknowledging that *Whitestone* rejected Yuanda's WT-3 Clerestory work.

Simply put, Whitestone never rejected Yuanda's work, which was a necessary condition precedent to Whitestone's ability to recover the costs of the WT-3 Clerestory remediation. Accordingly, the Court should grant summary judgment in favor of Yuanda.

Accordingly, Whitestone has not satisfied its burden of coming forward with evidence establishing that Whitestone formally and properly "rejected" Yuanda's work as failing to conform with the requirements of the Contract Documents, which is a condition precedent to triggering Yuanda's obligation to perform and pay for remedial work. Consequently, the Court should grant Yuanda's Motion for Summary Judgment.

### 2.   Only Whitestone Has The Right To "Reject" Yuanda's Work

Whitestone argues that if the Court does not find that its June 24 Letter constitutes *Whitestone's* rejection of Yuanda's work as required by Paragraph 10 of the Purchase Order Terms and Conditions, the letter satisfies Paragraph 10 because Yuanda was bound to rejections issued by *both* Whitestone *and* Sciame. Whitestone Mem., p. 15.  This argument fails because a third party such as Sciame did not have the ability to reject Yuanda's work under Paragraph 10. Paragraph 10 phrases Yuanda's obligation to correct defective work as follows: "replace or correct any Vendor's Work which **Subcontractor [Whitestone]** *shall reject* as failing to conform

to the requirements of this Purchase Order and/or Contract Documents . . . ." (Whitestone Ex. O, ¶ 10 (emphasis added).) This sentence expressly identifies _Whitestone_ as the only entity whose rejection of Yuanda's work gives rise to an obligation to replace or correct that work.

Whitestone argues that Sciame had the right to reject Yuanda's work because that right exists in Whitestone's Subcontract with Sciame (the "Sciame Subcontract"), which Whitestone asserts was incorporated into the Purchase Order.  Whitestone Mem., p. 16; Whitestone Ex. M, p. 10 (§ 4.1.5).  Whitestone's argument is patently false, grossly mischaracterizes the language of the Purchase Order Terms and Conditions, and is a conclusion Whitestone could only reach by ignoring the plain language of the Purchase Order, which expressly states the opposite.

Paragraph 2 of the Purchase Order Terms and Conditions states in relevant part:

The Contract Documents as set forth in Whitestone Purchase Order Attachment B related to curtain wall pertaining to the Prime Contract between the Owner and Subcontractor are incorporated herein by reference to the extent that the Prime Contract applies to the work under this Purchase Order.[1]

Paragraph 3 of the Purchase Order Terms and Conditions states in relevant part:

This Purchase Order includes the body of the Purchase Order, Attachments A, B, C and D attached, these Terms and Conditions and the Contract Documents as set forth in Attachment B (Contract Documents) related to curtain wall under the Prime Contract.  Further the Contract Documents and any addenda and written modifications to them are hereby incorporated by reference and made a part of this Purchase Order as if fully set forth herein except as specifically set forth in Attachment A.  This Purchase Order and the incorporated Contract Documents contain the entire agreement between Subcontractor and Vendor with respect to the Project.

Finally, Attachment B to the Purchase Order, which lists the "Contract Documents" that are expressly incorporated into the Purchase Order by the foregoing provisions, does not include the Sciame Subcontract.  This fact, of course, is absent from Whitestone's brief.

---

[1] This particular provision is ambiguous, as there is no contract between Owner and Subcontractor [Whitestone].  That ambiguity is not relevant to this particular legal argument.

The foregoing provisions clearly and unequivocally delineate the documents that comprise the contractual agreement between Whitestone and Yuanda.  None of these provisions incorporate the Sciame Subcontract.   Whitestone's entire argument for why the Sciame Subcontract is somehow part of the Purchase Order hinges on passing references to the Sciame Subcontract that cannot override the clear statement in Paragraph 3 which limits the scope of documents which comprise the Purchase Order.   That clear statement is buttressed by the integration clause which follows and which clarifies that the Purchase Order (defined in Paragraph 3) and Contract Documents (defined in Attachment B) "contain the entire agreement between" the parties.

Moreover, under New York law, "there must be a clear manifestation of an intent to be bound by the terms of the incorporated instrument." *Federated Mut. Ins. Co. v. Woostock '99, LLC*, 140 F. Supp. 2d 225, 228 (N.D.N.Y. 2001); *see also*, *U.S. ex rel. Keller Painting Corp. v. Torcon, Inc.*, 64 F. Supp. 3d 371, 381-82 (E.D.N.Y. 2014) (vague reference to documents that are "made a part of this agreement" did not incorporate by reference a data sheet).  Courts have found that "a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified."  *Hayward Baker, Inc. v. C.O. Falter Constr. Corp.*, 960 N.Y.S.2d 764, 766 (App. Div. 4th Dept. 2014).  In *Hayward Baker*, the plaintiff-subcontractor sought additional costs from the defendant-general contractor, and in so doing, relied on a "changed conditions" provision of a different contract that plaintiff asserted was incorporated into its contract with the defendant.  *Id.*  The court rejected plaintiff's claim, finding that "the only references in the contract to the extraneous writing at issue do not relate to or incorporate the 'changed conditions' clause in the extraneous writing."  *Id.*

As in *Hayward Baker*, here there is no expression that provisions related to rejection of Whitestone's work by Sciame in the Sciame Subcontract are incorporated into Whitestone's Purchase Order with Yuanda.  As such, those provisions in the Sciame Subcontract are not part of the Purchase Order, which is consistent with the aforementioned integration clause.

### 3.      Whitestone Accepted the Risk for the Remedial Work

In a last-ditch effort to support its argument that third parties can "reject" Yuanda's work, Whitestone cites language in Paragraph 2 Purchase Order Terms and Conditions stating that Yuanda "shall be bound by rulings of Subcontractor [Whitestone], Contractor [Sciame] and Owner and Architect/Engineer . . ." Whitestone Mem., p. 15. This provision obligates Yuanda to *perform work* that was directed by third parties, such as Sciame. But, significantly, Paragraph 2 is silent on *who bears the **financial risk*** of adhering to those rulings.  Unless and until Whitestone rejects Yuanda's work as non-conforming, as Whitestone is permitted to do under Paragraph 10, Whitestone bears the financial risk of performing remedial work.  Once Whitestone issues a notice of rejection on the basis that Yuanda's work is out of conformance, that risk transfers to Yuanda.  Since Yuanda's work conformed to the requirements of the Purchase Order and Whitestone failed to issue a proper rejection of that work, Whitestone must bear the costs for replacing or correcting Vendor's Work.

The Court should ignore Whitestone's histrionics regarding its "Sophie's choice" (Whitestone Mem., p. 25) and recognize that Whitestone could have allocated the risk differently at the contracting stage and chose not to do so.  Whitestone asserts that Yuanda's position is "extreme" and "commercially unreasonable."  Rather, Yuanda is simply following the letter of the contract between it and Whitestone.

It is Whitestone who wishes to read into the Purchase Order documents that are not expressly incorporated, in violation of the plain language of Paragraphs 2 and 3 of the Purchase Order Terms and Conditions, in violation of the integration clause therein contained, and in violation of New York law.  Whitestone's position is the extreme one, and it should be rejected. The Sciame Subcontract was never incorporated into the Purchase Order, and Whitestone cannot now turn its back on the Purchase Order's risk allocation provisions simply because Whitestone now finds those provisions disadvantageous.   *Hertz Global Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, --- F. Supp. 3d ---, 19-cv-06957 (AJN), 2021 WL 198802, at *5 (S.D.N.Y. Mar. 30, 2021) ("parties to a contract must remain free to allocate risks as they see fit" and "the Court will not rewrite the agreement to relieve a sophisticated contracting party like Plaintiff from terms that it later deems disadvantageous").

### C.     Yuanda Performed All Requested Remedial Work

Even if this Court were to find that Yuanda's work did not conform to the Purchase Order and that it was rejected by Whitestone, Yuanda still is entitled to summary judgment because the Purchase Order only permits Whitestone to recover costs from Yuanda for performing remedial work if Yuanda failed to replace or correct the work at issue.   Yuanda Mem., pp. 14-15. Paragraph 10 of the Purchase Order Terms and Conditions provides in relevant part:

> Vendor shall promptly prepare the plan for the approval of the Subcontractor, in order to replace or correct any Vendor's Work which Subcontractor shall reject as failing to conform to the requirements of this Purchase Order and/or Contract Documents whether rejected before or after installation, with exclusion of those specified in item (b) listed below. Upon approval of Vendor's plan by Subcontractor, Vendor shall promptly replace or correct any Vendor's Work. *If Vendor does not do so within a reasonable time*, Subcontractor shall have the right to do so and Vendor shall be liable to Subcontractor for the cost thereof.

Ex. 3, p. 6 at ¶ 10.

Whitestone's right to replace or correct Yuanda's work and to charge Yuanda for that effort only matured if Yuanda did not proceed to replace or correct its work within a reasonable time.  Even though Yuanda did not believe it was required to replace or correct its work for the reasons set forth above, when the Design Team issued the change to the deflection criteria in January 2017, Yuanda <u>immediately</u> took steps to replace or correct it (even though Sciame's rejection of Yuanda's work did not come until May 2019).  All of Yuanda's allegations in this regard are admitted by Whitestone in its Response to Yuanda's Rule 56.1 Statement:

| Date | Event | Para.[2] |
|---|---|---|
| January 30, 2017 | Design Team changes design for WT-3 Clerestory | 53, 55 |
| January 30, 2017 – November 2018 | Yuanda collaborated with Whitestone in developing a remediation plan for the WT-3 Clerestory. | 80 |
| | Yuanda redesigned the head connection for the WT-3 Clerestory in collaboration with Whitestone; provided a new head detail; and provided structural calculations for the WT-3 Clerestory head connection. | 81-83 |
| February 20, 2018 | Whitestone placed an order with AJBBC Crop. for the replacement, remedial brackets for the WT-3 Clerestory. | 103 |
| August 5, 2019 | Whitestone requested that Yuanda provide structural calculations for the new head connection Yuanda designed that included the stamp of a licensed professional engineer. | 84 |
| August 7, 2019 | Yuanda provided the structural calculations requested by Whitestone. | 84 |
| October 7, 2019 | At Whitestone's request, Yuanda submitted a revised set of structural calculations for the new WT-3 Clerestory head connection. | 86 |
| November 29, 2019 | Whitestone requested that Yuanda provide a proposal for the costs to fabricate and deliver the replacement brackets. | 104 |

---

[2] These are references to Yuanda's Rule 56.1 Statement of Facts.

| December 7, 2019 | Yuanda responded that the brackets could be delivered at a cost of between $4,488.91 and $10,002.23, depending on whether the brackets were shipped from China by ocean freight or air freight, respectively. | 105 |
|---|---|---|
| April 27, 2020 | Yuanda offered to fabricate the replacement brackets at Yuanda's cost and at no cost to Whitestone and advised that the fabrication time for the replacement brackets would be 35 days. | 106-107 |
| September 1, 2020 | Installation of the replacement brackets [not provided by Yuanda] began. | 108 |

The undisputed facts belie Whitestone's repeated arguments that Yuanda "refused" to provide any requested services.[3]

Whitestone argues that Yuanda ignored letters from Whitestone demanding Yuanda's performance, citing a declaration from Whitestone Vice-President Steve Grzic (the "Grzic Declaration"). Whitestone Mem., p, 27. However, the Grzic Declaration simply refers back to the June 24 and June 28, 2019 letters discussed above in Section II.B.1, *supra*. Grzic Declaration, ¶¶ 54-62. This June 2019 correspondence indicates nothing more than Yuanda declining to *pay for* certain remedial work because the remedial work did not result from Yuanda's deficient performance. The only other letter referenced by the cited paragraphs of the Grzic Declaration is a July 26, 2019 letter from Whitestone's **counsel**, which again merely demands that Yuanda *pay for* all remedial work. Grzic Declaration, ¶ 62.  Furthermore, Whitestone entirely ignores Yuanda's August 1, 2019 response, in which Yuanda affirmed that "Yuanda is willing to cooperate with Whitestone to complete the relevant work" and "Yuanda

---

[3] Whitestone asserts that Yuanda committed an unspecified anticipatory breach.  Whitestone Mem., p. 27. "An anticipatory breach of contract by a promisor is a repudiation of a contractual duty before the time fixed in the contract for performance has arrived." *Princes Point LLC v. Muss Dev. LLC*, 30 N.Y.3d 127, 133 (N.Y. 2017) (quotation and alterations omitted). "For an anticipatory repudiation to be deemed to have occurred, the expression of intent not to perform by the repudiator must be 'positive and unequivocal[.]'" *Id.* (citations omitted). Whitestone fails to cite any "positive and unequivocal" expression by Yuanda not to perform Yuanda's obligations.

will *cooperate with the implementation of [Whitestone's] proposed solutions*, that is, to cooperate with the redesign of corresponding drawings." Yuanda Ex. 12, p. 1 (emphasis added) [ECF No. 121-12].  And indeed, the undisputed facts demonstrate that Yuanda proceeded with such cooperation.

Whitestone cannot recover under Paragraph 10 of the Purchase Order Terms and Conditions unless it can demonstrate that Yuanda did not proceed to replace or correct its work within a reasonable time following rejection thereof.  If the "rejection" occurred in June 2019 as Whitestone asserts, the above timeline demonstrates extensive, timely performance by Yuanda to replace or correct its work (even though Yuanda did not believe this was required).  Whitestone was therefore not entitled to perform Yuanda's work on its behalf and charge Yuanda for it.

## III.   YUANDA'S OPPOSITION TO WHITESTONE'S MOTION FOR SUMMARY JUDGMENT

Whitestone presents its *prima facie* case for summary judgment solely in Section A(3) of Whitestone's Memorandum, an argument that spans less than three (3) pages. Whitestone Mem., pp. 9-12.  Whitestone does not submit any admissible evidence establishing the elements of its *prima facie* breach of contract claim.  Rather, Whitestone's entire Motion relies on a faulty technical argument whereby Whitestone claims Yuanda's Answer is not effective and that Yuanda is deemed to have admitted the allegations in Whitestone's Complaint.  That this is the crux of Whitestone's Motion only underscores the lack of admissible evidence establishing its claim.  Consequently, Whitestone's Motion for Summary Judgment should be denied.

### A.   Whitestone's Technical Argument Does Not Support Summary Judgment

As a plaintiff seeking summary judgment, Whitestone bears the burden of citing admissible evidence establishing each element of its breach of contract claim. *Muench Photography, Inc. v. McGraw-Hill Global Education Holdings, Inc.*, 367 F. Supp. 3d 82, 88

(S.D.N.Y. 2019). "The moving party initially bears the burden of informing the Court of the absence of a genuine dispute of material fact by citing particular evidence in the record." *Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 3d 142, 156 (S.D.N.Y. 2020).

Whitestone has failed to meet its burden because Whitestone does not cite a single admissible document, piece of testimony, affidavit, or ***any evidence whatsoever*** in favor of its *prima facie* argument for summary judgment. Whitestone Mem., pp. 9-12.  Instead, Whitestone argues that Yuanda did not deny the allegations in Whitestone's Complaint in Yuanda's Amended Answer, and therefore those allegations should be deemed admitted. *Id.*   This misleading argument should be rejected by this Court.

Yuanda filed its original Answer on June 26, 2020, in which Yuanda denied all material allegations of Whitestone's Complaint.  (ECF No. 39).  Significantly, Whitestone does <u>not</u> argue that Yuanda's original Answer was insufficient. Subsequently, this Honorable Court gave Yuanda leave to amend its affirmative defenses solely to include a defense based on failure to satisfy a condition precedent.  (ECF No. 85).   Whitestone contends that because Yuanda's Amended Answer did not recite Yuanda's original Answer in full, Yuanda admitted Whitestone's allegations.  This is Whitestone's entire basis for summary judgment.

Yuanda's Amended Answer did not recite Yuanda's original Answer because this Honorable Court explicitly stated that the scope of the amendment to Yuanda's Answer was limited solely to adding Yuanda's Affirmative Defense. This Honorable Court's statements to that effect during the December 12, 2020 hearing are excerpted below:

> <u>Whitestone Counsel</u>:  I do have a question of the Court regarding the scope of the amendment and ask specifically if it's limited to pleading the condition precedent.
>
> <u>Court</u>:  … Yes, it is limited to pleading the condition precedent. No good cause has been shown for an amendment for any other purpose. I determined that there

15

is sufficient justification, particularly in light of my decision on the motion, to permit them [Yuanda] to add this as a defense.  But the scope of the amendment is limited to adding that as a defense.

Whitestone Ex. C, p. 27:3-15.  Yuanda adhered to this Honorable Court's directive, <u>made at Whitestone's counsel's request</u>, and submitted an Amended Answer limited to the Affirmative Defense related to condition precedent.   Whitestone's attempt to take advantage of this Honorable Court's limitation on the scope of Yuanda's Amended Answer should not be entertained.

Even if Whitestone's absurd technical argument had merit, Yuanda's Affirmative Defense actually includes allegations that deny that Yuanda breached the terms of the Purchase Order. Whitestone argues as part of its prima facie showing that "it notified Yuanda that Yuanda's work was nonconforming and demanded that Yuanda remediate its work under the Purchase Order." Whitestone Mem. at 9. Yuanda's Affirmative Defense directly refutes this allegation, as Yuanda specifically alleges that "Whitestone has not informed Yuanda that Whitstone rejects or has rejected Yuanda's work for failing to conform to the requirements of the Purchase Order and/or Contract Documents." Whitestone Ex. D, ¶ 5. Similarly, Whitestone argues as part of its prima facie case that Yuanda did not deny Whitestone's allegation that Yuanda breached the Purchase Order. Whitestone Mem., p 10. Again, Yuanda's Affirmative Defense directly refutes this allegation, as it alleges that "Yuanda's work [ ] conforms to the requirements of the Purchase Order and/or Contract Documents." Whitestone Ex. D, ¶ 4.

Finally, even if the Court deems the allegations of Whitestone's Complaint admitted, Whitestone still cannot prevail on its Motion for Summary Judgment because those allegations consist of mere legal conclusions and naked averments, rather than evidentiary facts.  As such, they do not provide a sufficient basis for Whitestone to establish its *prima facie* claim.  *Snead v. City of New York*, 463 F. Supp. 3d 386, 394 (S.D.N.Y. 2020) ("at summary judgment, an

averment is not taken as true; as the movant, [plaintiff] must support [its] claims with ***specific facts in the record***, not mere conclusions") (emphasis added).[4]

Simply put, Whitestone has failed to provide sufficient evidentiary support to establish its *prima facie* claim, and therefore its Motion for Summary Judgment should be denied. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986) (Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

### B.    Whitestone Does Not Identify When Or How Yuanda Allegedly Breached

Whitestone's Motion for Summary Judgment (contained in Section A of its Memorandum) does not identify when or how Yuanda actually breached the Purchase Order. The nature of Yuanda's purported breach and the facts surrounding that alleged breach are critical to the Court's resolution of this case, *regardless* of whether Yuanda is deemed to have admitted Whitestone's allegations. Identifying the date of Yuanda's alleged breach is necessary to determine whether Whitestone's failure to perform a condition precedent excused Yuanda's continued performance.  The date of Yuanda's purported breach is also important because it determines the date after which any damages incurred by Whitestone began to accrue. Any costs Whitestone incurred prior to Yuanda's purported breach would not be damages that Whitestone could recover. Because Whitestone's affirmative showing for its Motion fails to provide any information or evidentiary support regarding the nature and date of Yuanda's supposed breach, the Court cannot resolve these issues and Whitestone's Motion should be denied.

---

[4] Whitestone cites no authority for the proposition that a technical pleading defect provides an evidentiary basis for summary judgment.  Whitestone relies on *Silk v. HCMC Legal, Inc.*, 20 Civ. 10389 (KPF), 2021 WL 735348 (S.D.N.Y. Feb. 24, 2021), for the proposition that an amended answer supersedes the original. Whitestone Mem., p. 10, FN 3. However, *Silk* does not apply here because it considered a motion to strike affirmative defenses that was rendered moot by an amended answer. As such, it did not hold that a technical pleading deficiency provides a basis for summary judgment, as Whitestone asserts.

## IV.    YUANDA IS ENTITLED TO PARTIAL SUMMARY JUDGMENT WITH RESPECT TO SEVERAL CATEGORIES OF WHITESTONE'S DAMAGES

In the event the Court denies Yuanda's Motion for Summary Judgment as to liability (or grants Whitestone's motion with respect to liability), Whitestone still cannot establish that it is entitled to the full amount of damages that it seeks, and partial summary judgment as to several of those categories of damages is appropriate.  First, the most Whitestone could ever recover is the cost of items included in "Vendor's Work," which is only $32,287.61, and Yuanda is entitled to partial summary judgment on Whitestone's other items of damages.  Second, of that $32,287.61, $24,395.00 is for replacement brackets that were paid for by Whitestone months before Yuanda's alleged breach, and Yuanda is therefore not responsible for those costs.  Third, even if this Honorable Court agrees that Whitestone may recover damages beyond the costs of items included in "Vendor's Work," Whitestone openly admits it has not offered any evidence to support several categories of its damages, and as to those particular categories, summary judgment in Yuanda's favor is appropriate.  Finally, there is no basis for recovery of Whitestone's attorneys' fees.

### A.    Whitestone's Maximum Recovery Is Limited To The Costs Of Items Which Comprise "Vendor's Work"

The plain language of Paragraph 10 of the Purchase Order Terms and Conditions limits Whitestone's damages to the costs it paid for items included in "Vendor's Work."  Whitestone offers no convincing argument to the contrary, other than citation to dictionary definitions which do not support its position.  Whitestone proceeds to argue that Paragraph 10 can be ignored in favor of the remedies provided in the "Vendor Default & Termination" provisions of Paragraph 6; however, Whitestone has presented no evidence that it satisfied any of the conditions precedent to invoking the relief set forth in Paragraph 6.  Whitestone then tries to argue that Paragraph 19, which contains an indemnity clause, allows Whitestone to recover the significant

18

portion of its purported damages which do not constitute items included in "Vendor's Work." This argument also fails, as the indemnity provision only applies to third party claims, and moreover, it does not apply to the extent the claim is due to the negligence of the indemnitees, which in this case includes the Architect.

### 1. The Plain Language Of The Purchase Order Limits Whitestone's Damages To The Cost Of Items Included In "Vendor's Work"

Even if Yuanda is liable to Whitestone under Paragraph 10 of the Purchase Order Terms and Conditions, Yuanda is only liable for the cost of items included in "Vendor's Work."  The relevant portion of Paragraph 10 states:

> Upon approval of Vendor's plan by Subcontractor, Vendor shall promptly replace or correct any Vendor's Work. If Vendor does not do so within a reasonable time, Subcontractor shall have the right to do so and Vendor shall be liable to Subcontractor for *the cost thereof*.

Ex. 3, p. 6 at ¶ 10.

Yuanda's liability is limited to "the cost thereof."  "Thereof" refers to "Vendor's Work." Whitestone's damages are so limited.  Yet, Whitestone seeks costs that are not included in the definition of "Vendor's Work," such as installation costs, overhead, profit, and insurance costs.

Whitestone does not even attempt to argue that these costs can be recovered as "Vendor's Work."  Rather, Whitestone argues that it can recover $102,825.94 in labor and installation costs based on dictionary definitions of the word "replace." Whitestone Mem., p. 29.  There is no doubt that the Purchase Order contains the word "replace," but Whitestone ignores the *subject matter* being replaced, which is "Vendor's Work."  The Purchase Order provides a very clear and explicit list of services, costs and materials which are included in the definition of Vendor's Work.  Ex. 3, p. 1.  There is no reasonable interpretation of "Vendor's Work," including any additional dictionary definitions, whereby Yuanda could be responsible for Whitestone's

installation costs, insurance costs or overhead and profit.   Summary judgment as to these categories of damages is appropriate.  (See Section IV.A.4, *infra*, for a Damages Table).

2.      **Whitestone Cannot Recover Costs For Items Not Included In "Vendor's Work" Under The Purchase Order's Default And Termination Provision**

Whitestone argues that Yuanda is liable for installation costs, overhead and profit, insurance costs, and attorneys' fees under the default and termination provision set forth in Paragraph 6 of the Purchase Order Terms and Conditions.   Whitestone Mem., pp. 29-30. Paragraph 6 contains very specific terms whereby Whitestone may declare Yuanda in default and subsequently terminate the contract.  *See* Whitestone Ex. O, pp. 3-4 (¶ 6).  Paragraph 6 provides that Whitestone may issue a notice of default if one of seven "events of defaults" occurs.   *Id.* However, the occurrence of one of these events of default does not automatically place Yuanda in default.  *See id*.  After Whitestone identifies what it believes to be an event of default, it must then provide Yuanda with "written notice advising Vendor of the default," which informs Yuanda that Yuanda has a duty to submit "a written cure plan" within seven (7) days and further informs Yuanda of the contractual options (*e.g.* remedies) Whitestone intends to seek.   *Id.* Finally, Whitestone is only entitled to its remedies under Paragraph 6 "…to the extent that Vendor's written cure plan fails to be approved by the Subcontractor and the Vendor is informed of such failure…" *Id.*

Accordingly, to find that Whitestone is entitled to recover for damages under the default and termination provision set forth in Paragraph 6 of the Purchase Order Terms and Conditions, Whitestone must prove that: (1) Yuanda failed to comply with a provision of the Purchase Order or Contract Documents; (2) Whitestone issued a notice of default that conforms to Paragraph 6's requirements, which include (a) notice that Yuanda has seven days to submit a cure plan and (b) identification of Whitestone's selected remedies; and (3) Yuanda failed to timely submit a cure

plan, or Whitestone rejected Yuanda's proposed cure plan and duly advised Yuanda of such rejection. None of this occurred.

Whitestone makes a half-hearted attempt to claim Yuanda was *constructively* in default by arguing that once Yuanda was notified of Sciame's rejection of the WT-3 Clerestory work and "thereafter refused to provide material *without first being paid*, Yuanda materially failed to prosecute its work and failed to comply with the Purchase Order." Whitestone Mem., p. 30 (emphasis added). This argument fails for several reasons. *First*, Yuanda's refusal to provide materials without first being paid, even if true, is insufficient to trigger Whitestone's remedies, as provided in Paragraph 6. Whitestone's remedies only accrue once it has provided Yuanda with written notice of a default and the opportunity to submit a cure plan, which Whitestone must also reject and notify Yuanda of such rejection. Whitestone did none of these things.

*Second*, notwithstanding the technical reasons why Whitestone's argument fails, the argument is not even premised on an accurate statement of fact. Whitestone's argument claims that "Yuanda materially failed to prosecute its work…" This argument disingenuously ignores the evidence currently before the Court, both in documents and admissions of Whitestone employees, which clearly shows that between January 2017 and April 2020, Yuanda performed remedial design work and provided other design services, without additional compensation, and offered to provide replacement brackets. (See Table of Evidence, § 2.C, *supra*).

### 3. Whitestone Cannot Recover Costs For Items Not Included In "Vendor's Work" Under The Purchase Order's Indemnification Provision

Whitestone's next diversion is to argue that it is entitled to recover all its costs and expenses, including items not included in "Vendor's Work," <u>*plus*</u> its attorney's fees, under the Purchase Order's indemnity requirements. Whitestone Mem., p. 31. Paragraph 19 of the Purchase Order Terms and Conditions states in relevant part:

> Vendor shall indemnify, defend and hold Subcontractor, Owner, and <u>Architect</u> … (the "Indemnified Parties"), harmless from and against any and all claims, demands, suits, actions, expenses, judgments, losses and liabilities, including fines and penalties, costs and attorneys', consultants' and experts' fees as a result of Vendor's breach of this Purchase Order in accordance with the terms of this Purchase Order and the Contract Documents, but if such claims, demands, suits actions, expenses judgments, losses and liabilities, arise out of or are claimed to arise out . . . <u>damage to tangible and intangible property including the loss of use resulting therefrom, Vendor shall not be obligated to indemnify to the extent of the Indemnified Parties' negligence</u> (but shall still be required to defend). . . .."

Whitestone Ex. O, p. 9 (¶ 19) (emphasis added).  Whitestone's argument fails for two reasons: (1) indemnity provisions in New York are limited to third party claims, and (2) the claim at issue arises out of property damage (*i.e.*, the WT-3 Clerestory which needed to be replaced), and as such Yuanda is not liable because the claim arose from the negligence of the "Indemnified Parties," which include Architect.

*First*, under New York law, an indemnified party (*i.e.,* Whitestone) is not entitled to recover under an indemnity clause on a first-party claim against the indemnitor (*i.e.*, Yuanda). Indemnity provisions do not encompass first-party claims or actions, "absent 'unmistakably clear' language in an indemnification provision that demonstrates that the parties intended the clause to cover first-party claims." *Lehman XS Trust, Series 2006-GP2 by U.S. Bank Nat'l Assoc. v. Green Point Mortg. Funding, Inc.*, 916 F.3d 116, 125 (2d Cir. 2019) (citations omitted). Indemnity provisions are a "mechanism that enables a party liable on a third-party claim, the indemnitee, to shift that loss to another, the indemnitor." *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011). "Accordingly, the default presumption in New York courts is that indemnification involves liabilities, losses, or claims associated with *third-party suits, **rather than contractual damages or losses between the contracting parties themselves**.*" *Id.* at 416 (emphasis added). The language of the Purchase

Order does not include "unmistakably clearly language" demonstrating that Whitestone and Yuanda intended that first-party claims would be covered by the indemnity.

*Second*, even if the indemnification provision applied to first party claims, it does not apply to claims arising out of property damage to the extent such claims are due to the negligence of the Indemnified Parties, which include Architect.  Whitestone's claim arises out of "damage to tangible property," *i.e.*, the WT-3 Clerestory, which allegedly required replacement due to such damage.  (Whitestone Compl., ¶¶ 17, 22, 34, ECF No. 4).  It is undisputed that the alleged damage, the repairs of which are the subject of this case, was caused by Architect's negligence in failing to provide the correct design information prior to Yuanda's performance of its work.  (Yuanda Rule 56.1 Stmnt. ¶¶ 39, 41-45, 48-49, 51, 53).  Architect is an "Indemnified Party" and the indemnification obligation expressly does not apply "to the extent of the Indemnified Parties' negligence."  Whitestone Ex. O, p. 9 (¶ 19).

For these reasons, Whitestone is not entitled to recovery against Yuanda for any category of damages listed in Paragraph 19, and its potential recovery remains limited to items included in "Vendor's Work."

**4.     The Elements Of Whitestone's Damages That Comprise Items Of "Vendor's Work" Total $32,287.61, Which Is The Upper Limit Of Whitestone's Potential Damages**

Whitestone's total alleged damages are as follows:

| **Description of Alleged Damage** | | **Alleged Damage** |
|---|---|---|
| Whitestone Manpower | | $102,825.94 |
| Whitestone Design Costs | | $17,600.00 |
| Equipment / Material / Services | | $47,389.65 |
| The above Equipment / Material / Services consist of: | | |
| 1    Engineering services for work platform | $3,060.00 | |
| 2    Rigid Insulation for work platform | $2,182.86 | |
| 3    Wood for base of scaffold | $4,955.80 | |
| 4    Aluminum for interior work platform | $342.31 | |

| | 5 | Rental for man / material lift | $2,551.77 | |
| | 6 | Wood for interior work platform | $1,466.90 | |
| | 7 | Waterproofing / sealants / gaskets | $686.48 | |
| | 8 | Exterior silicone sealant | $786.50 | |
| | 9 | Torque wrench | $542.40 | |
| | 10 | Replacement Clerestory brackets | $24,395.00 | |
| | 11 | Invoices from Tanner (hardware / tools / safety) | $6,419.63 | |
| | | | | |
| **Sub Total** | | | | **$167,815.59** |
| Whitestone's Overhead and Profit (20% of the above) | | | | $33,563.12 |
| Insurance (18% of the above, including Overhead & Profit) | | | | $36,248.17 |
| **Total** | | | | **$237,626.88** |

Ex. 23, pp.1, 4. In its Motion for Summary Judgment, Yuanda offered evidence that only items 7, 8, 10 and 11 in the above table represent costs for items included in "Vendor's Work." Yuanda Mem., p. 17. This statement was supported with testimony from Whitestone's Vice President, Mr. Grzic. *Id.* Whitestone does not refute this position.

### B. Although Replacement Brackets Are An Item Of "Vendor's Work," Whitestone Is Not Entitled To This Cost, Thereby Reducing Its Potential Damages To $7,892.61

Whitestone ignores completely Yuanda's argument that the costs to fabricate and deliver replacement brackets ($24,395.00, line item 10 in the above table) are not recoverable because Whitestone incurred that cost months before any alleged breach on the part of Yuanda. Yuanda Mem., pp. 21-23. Whitestone openly admits that it "purchased and paid for replacement brackets in 2018" – well before Yuanda's work was purportedly "rejected" and any liability for the costs of the replacement brackets could have arisen. Whitestone's Response to Yuanda's Rule 56.1 Statement, p. 42 (¶ 110).

Furthermore, Whitestone's asserted basis for entitlement to these damages is Paragraph 10 of the Purchase Order Terms and Conditions, which requires that Yuanda be given an opportunity to repair or correct its work before Whitestone is permitted to perform such repairs

and charge them to Yuanda.  Whitestone never gave Yuanda this opportunity with respect to the brackets, as they were purchased before Whitestone's purported rejection of Yuanda's work. Accordingly, Yuanda cannot be liable for the cost of the replacement brackets, and summary judgment in Yuanda's favor as to this item of damages is appropriate.

> **C.**     **Even If This Court Finds That Whitestone May Recover Damages For Items Not Included In "Vendor's Work," Whitestone Has Not Provided Admissible Evidence Of Several Categories Of Its Damages, And As To Those Categories Of Damages, Partial Summary Judgment Is Warranted.**

Whitestone bears the burden of proving its damages and cannot meet that burden with bare assertions or speculation. *Proper v. State Farm Mut. Auto Ins. Co.*, 882 N.Y.S.2d 340, 341 (App. Div. 3d Dept. 2009).  Summary judgment is appropriate where a plaintiff fails to support its damages. *See Kader v. Paper Software, Inc.*, 111 F.3d 337, 342 (2d Cir. 1997) (affirming summary judgment dismissing breach of contract counterclaim where party "had not provided support for any of the damages asserted in [its] claims"); *see also Celotex*, 477 U.S. at 322-23 (summary judgment mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). "Where a defendant's liability is limited to a certain amount, courts may grant summary judgment limiting damages to that amount." *Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770(SAS), 2004 WL 2008848, at *5 (S.D.N.Y. Sept. 8, 2004).

As discussed above, Whitestone cannot establish that it is entitled to the $102,825.94 it seeks for manpower and installation costs. Furthermore, Whitestone has failed to submit admissible evidence supporting entitlement or quantum for the following categories of damages: (1) $33,563.12 in overhead and profit; (2) $36,248.17 in insurance costs; (3) $17,600.00 in unspecified design costs; and (4) $3,060.00 for engineering services.  Whitestone fully admits that it has not provided any documentation to support its alleged damages in categories (1), (2)

and (3); as to category (4), Whitestone admits that all documentation supporting its damages has been produced, and there is no documentation to support this cost. (See Whitestone Resp. to 56.1 SOF, ¶¶ 99-102). For these reasons, and independent of the reasons set forth in Sections IV.A and B, *supra*, partial summary judgment on these categories of damages is warranted.[5]

### 1.  Overhead and Profit

Whitestone seeks $33,563.12 in overhead and profit associated with the WT-3 Clerestory remedial work. Whitestone Mem., p. 31; Whitestone Ex. JJ, p. 1. Whitestone does not identify any provision in the Purchase Order that allows Whitestone to recover "profit." The only reference in the Purchase Order to "overhead" cited by Whitestone is Paragraph 9. Whitestone Mem., p. 31. However, Paragraph 9 has no bearing on this claim.

Paragraph 9 is titled "Time of Performance" and provides that:

Vendor shall reimburse all damages resulting from Vendor's failure to prosecute or complete Vendor's Work in a timely manner; Subcontractor's actual damages also may include, without limitation, extended overhead, acceleration and any damages of other trade Subcontractors or other vendors . . . ."

Whitestone Ex. O, p. 6 (¶ 9). Thus, Paragraph 9 speaks only to damages for delay. There is no claim that Yuanda did not complete the WT-3 Clerestory work in a timely manner; Whitestone seeks compensation for the costs of remedial work only, not Project delays. Paragraph 9 therefore does not apply.

Implicitly acknowledging that the Purchase Order does not allow the recovery of overhead or profit for remedial work, Whitestone falls back on asserting that "Courts routinely award overhead and profit in construction cases." Whitestone Mem., p. 31 FN 13. However,

---

[5] Whitestone cites *Brown v. All Pro Contracting Co.*, No. 19 -CV-10267 (RA), 2020 WL 6700576 (S.D.N.Y. Nov. 13, 2020) for the proposition that an "inquest on damages" can be avoided where a party provides evidence that allows the Court to calculate damages with reasonable certainty. Whitestone Mem., p. 33. Whitestone's reliance on *Brown* is unavailing because the Court scrutinized the documentary evidence submitted in support of the plaintiff's damages and disallowed damages that were not properly supported. *See Brown*, 2020 WL 6700576, at *3.

Whitestone erroneously relies on inapplicable authority in which courts calculated damages on a *quantum meruit* basis. *Id.* Whitestone does not assert *quantum meruit* as the basis for its recovery and, therefore, Whitestone cannot recover overhead and profits under that theory.

The only non-*quantum meruit* case that Whitestone cites, *Columbia Asphalt Corp. v. State*, 420 N.Y.S.2d 36 (App. Div. 3d Dept. 1979), does not support Whitestone's claim to entitlement for overhead and profit.   In that case, the court found, "The total job cost was testified to by claimant's witness as amounting to $11,513,469 and such amount *is supported by documentary proof submitted by claimant at trial*. We also find, *based on our examination of the record*, that the use of 10% for overhead and an additional 10% for profit is fair and reasonable." *Id.* at 136.   This passage indicates (1) that the record supported entitlement to overhead and profit, and (2) that the record provided some basis for evaluating what that overhead and profit should be.   Whitestone has not identified anything in the record to support either its entitlement to overhead and profit or the quantum thereof.

Indeed, the fact that Paragraph 9 identifies overhead as a specific category of damages for delay claims suggests that the failure of the Purchase Order to identify overhead as a specific category of damages for remedial work under Paragraph 10 indicates that the parties intended for Paragraph 10 to exclude overhead damages.   *KLS Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d 508, 542 (S.D.N.Y. 2020) ("Under the doctrine of *expressio unius est exclusio alterius*, when a term is expressly included in a contractual provision, its exclusion from other provisions within the same contract reflects the parties' intent that the omission was intentional[.]").

At bottom, Whitestone pulled 20% for overhead and profit out of thin air and does not advance any argument explaining how or why the Purchase Order can be read to allow for such damages.  Partial summary judgment in Yuanda's favor on these damages is appropriate.

### 2.   Insurance

Whitestone seeks damages for "insurance" in the amount of $36,248.17. Whitestone Ex. JJ, p. 1. Yuanda demonstrated in its Motion for Summary Judgment that: (a) Whitestone has no entitlement to insurance costs under the Purchase Order; and (b) Whitestone has produced no admissible evidence demonstrating its damages, such as its insurance policies or evidence of premiums that Whitestone paid as a direct result of the remediation work. Yuanda Mem., pp. 20-21. Whitestone does not address this issue at all. Whitestone has conceded this issue and the Court should grant partial summary judgment in Yuanda's favor on this element of damages.

### 3.   Design Costs

Whitestone seeks $17,600.00 in unspecified "Design" costs. Whitestone Ex. JJ, p. 1. As Yuanda discussed in its Motion for Summary Judgment, Whitestone has: (a) provided no explanation regarding what design services it provided; or (b) identified a basis in the Purchase Order under which Yuanda would be responsible for the costs of the unspecified design services. Yuanda Mem., pp. 18-20. Whitestone does not respond to the points raised by Yuanda and has therefore conceded the argument. Accordingly, the Court should grant summary judgment in Yuanda's favor on this category of damages.

### 4.   Engineering Services Costs

Whitestone admits that all of the supporting documentation for its alleged damages is reflected on documents Bates numbered WCC005617 through WCC005685.  (See Whitestone Resp. to 56.1 SOF, ¶ 99).  Those documents do not contain any support for the $3,060.00 for

"Engineering services for work platform," identified in line item 1 of the Damages Table in Section IV.A.4. Summary judgment as to these damages is appropriate.

### D.    Whitestone Is Not Entitled To Its Attorneys' Fees

The sole basis for Whitestone's argument that it is entitled to attorneys' fees is the indemnification provision in Paragraph 19 of the Purchase Order Terms and Conditions. For the reasons set forth in Section IV.A.3, incorporated here, the indemnity provision does not support recovery of attorneys' fees (or any damages for that matter). Summary judgment should be granted in Yuanda's favor as to Whitestone's claim for attorneys' fees.

## V.    CONCLUSION

Yuanda only had an obligation to replace or correct its work if all three of the following occurred: (1) Yuanda's work was not in conformance with the Purchase Order requirements; (2) Whitestone rejected Yuanda's work on that basis; and (3) following such rejection, Yuanda failed to replace or correct its work. Whitestone cannot satisfy any of these requirements, let alone all three. Summary judgment in Yuanda's favor is therefore appropriate.

As to Whitestone's Motion for Summary Judgment, it has failed to present any evidence to establish its prima facie case, and the Motion should be denied.

Even if this Honorable Court denies Yuanda's Motion for Summary Judgment as to liability, there are ample grounds to award partial summary judgment as to several items of Whitestone's damages, thereby limiting the information to be presented at trial. This Court should find that Paragraph 10 of the Purchase Order Terms and Conditions caps Whitestone's potential damages to the costs of items included in "Vendor's Work," which are $32,287.61, and are highlighted in yellow in the table below:

29

| **Description of Alleged Damage** | | **Alleged Damage** |
|---|---|---|
| Whitestone Manpower | | $102,825.94 |
| Whitestone Design Costs | | $17,600.00 |
| Equipment / Material / Services | | $47,389.65 |
| | The above Equipment / Material / Services consist of: | |
| 1 | Engineering services for work platform | $3,060.00 | |
| 2 | Rigid Insulation for work platform | $2,182.86 | |
| 3 | Wood for base of scaffold | $4,955.80 | |
| 4 | Aluminum for interior work platform | $342.31 | |
| 5 | Rental for man / material lift | $2,551.77 | |
| 6 | Wood for interior work platform | $1,466.90 | |
| 7 | Waterproofing / sealants / gaskets | $686.48 | |
| 8 | Exterior silicone sealant | $786.50 | |
| 9 | Torque wrench | $542.40 | |
| 10 | Replacement Clerestory brackets | $24,395.00 | |
| 11 | Invoices from Tanner (hardware / tools / safety) | $6,419.63 | |
| | | |
| **Sub Total** | | **$167,815.59** |
| Whitestone's Overhead and Profit (20% of the above) | | $33,563.12 |
| Insurance (18% of the above, including Overhead & Profit) | | $36,248.17 |
| **Total** | | **$237,626.88** |

However, this Court should also find that Whitestone cannot recover the portion of those damages attributable to the cost to purchase replacement brackets ($24,395.00), thereby reducing Whitestone's potential damages at trial to $7,892.61.

Alternatively, if this Honorable Court believes that damages attributable to items not included in "Vendor's Work" are available, then this Court should grant summary judgment as to the following items of damages, highlighted in blue above, for which Whitestone has not provided sufficient evidence to substantiate its damages: Whitestone design costs ($17,600), Engineering services for work platform ($3,060.00), Whitestone's overhead and profit ($33,563.12), and Whitestone's insurance ($36,248.17). Finally, this Honorable Court should grant summary judgment in Yuanda's favor on Whitestone's request for attorneys' fees.